Michael J. COSTELLO, Petitioner,

v.

MERIT SYSTEMS PROTECTION
BOARD, Respondent,

and

Office of Special Counsel, Intervenor.

No. 97–3410.

United States Court of Appeals,
Federal Circuit.

July 16, 1999.

Peter B. Broida, Arlington, Virginia, argued, for the petitioner.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued, for the respondent. With him on the brief were David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief were Elaine Kaplan, Special Counsel, William E. Reukauf, Bruce D. Fong, and Joseph E. Siegelman, Attorneys, U.S. Office of Special Counsel, Washington, DC.

Stephanie M. Conley, Attorney, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued, for the intervenor. With her on the brief were Mary L. Jennings, General Counsel and Martha B. Schneider, Assistant General Counsel.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the decision of the Merit Systems Protection Board (Board) that the appellant Michael Costello violated the Whistleblower Protection Act by transferring a subordinate employee (and refusing to transfer him to a location he preferred) in retaliation for the employee's disclosure of his supervisor's misconduct. We reverse.

## I

The underlying facts are largely undisputed. The following statement is based upon the facts found by the Board's administrative law judge and by the Board, and facts in the record.

A. At the time of the events in this case, the Inspector General's Office of the Department of Veterans Affairs (Department) had a field office in Los Angeles and a regional office in Seattle, Washington, which was subordinate to the Los Angeles office. James Steen was a special agent in the Seattle office, and George Strehle was the special agent in charge of the Los Angeles office. Strehle supervised Steen and the other agents in the Seattle office.

In 1989, apparently because of complaints about Strehle from the Seattle agents, James Cole, another agent with the Inspector General's office, investigated employee morale in the Seattle office. In January 1990, Cole interviewed Steen who, under a promise of confidentiality, alleged that Strehle (1) used profanity regularly, a violation of the Department code of conduct, and (2) abused his authority by harassing and intimidating employees.

Cole submitted a written report, concluding that the accusations made by Steen (and the other Seattle agents) were true. The Department took no action, however, and in April 1990 so informed Steen and the other Seattle agents.

B. In August of 1990, Stephen Trodden was appointed the new Inspector General. In November, the appellant Costello was hired as the Assistant Inspector General for Investigations. Costello was based in Washington, D.C.

In January, 1991, Costello received a letter from Steen and the other Seattle agents asserting that "the Seattle office is now a victim of micromanagement and retaliation" from Strehle. The letter, which summarized the Cole investigation, closed as follows:

Strehle stated that he knows everything that was said about him [in the Cole report], and he knows who provided that information. Another comment that Strehle has made is that he can take action against us at any time, because we are only human and we make mistakes.

Strehle has carried through with his threats and initiated retaliatory action against the Seattle staff in various forms. We are now asking that you intervene and redress this matter.

After discussing the Cole investigation with his staff and reviewing the Cole report, Costello met with Strehle and told him about the complaints. Strehle responded that he was often critical of the Seattle Office's performance and that this criticism may have caused the agents' complaints. Costello told Strehle that while he had no problem with hard taskmasters, if Strehle was "a ranting raving lunatic that screams and yells and demeans and curses . . . . I don't tolerate that."

In April 1991, Costello met with the agents in Seattle and discussed their complaints about Strehle. Costello told Steen and the others that he would take action against Strehle for any incidents that oc-

curred after he took office—after November of 1990—but that he would not take action for anything occurring before that time, including the incidents described in the Cole report. After listening to the agents' complaints about Strehle's alleged retaliation for their cooperation in the Cole investigation, Costello concluded that Steen and the others "didn't provide me with anything that smelled of retaliation, as far as I was concerned. They gave me specifics which you might term micromanagement."

Costello then proposed to mediate the dispute between the Seattle agents and Strehle. He concluded that all the agents except Steen approved the proposal, stating in his meeting notes that "Steen is [the] most disgruntled," but he left the meeting believing that "if the whole office decided to [go for the mediation], Jim Steen would probably come around."

In early May, however, the agents wrote Costello that while they "appreciate[d his] efforts and concern in addressing this matter," they rejected the proposed mediation because "any meeting of this type would only result in Mr. Strehle increasing his retaliation against the staff of the Seattle office."

C. In January 1992, Peter Baci and Walter Burleson, both with the Washington, D.C. Inspector General's staff, performed an annual review of the Los Angeles and Seattle offices (and of the other field offices). Their report—a draft of which Costello received by March 22 1992, and which was released a month later— concluded that the Seattle Office was overstaffed and the Los Angeles office understaffed. It recommended "that two [Seattle] positions, the GM–13 [Steen's position] and the recently vacated secretarial position, be reassigned to Los Angeles."

Five days after receiving the draft, Costello wrote Steen "to advise [him] that [he was] transferred from the Seattle Resident Agency to the Los Angeles Field Office," effective June 30, 1992. In the letter, Costello informed Steen of the conclusions and recommendations of the Baci and Burleson report and told Steen that he was chosen for reassignment because his "position [was] listed as one designated as a reassignment position."

Steen called Jon Wooditch, Inspector General Trodden's executive assistant, and complained that if thus transferred, he would be subject to retaliation from Strehle. Wooditch informed Trodden, who suggested that a location other than Los Angeles be found for Steen, because Steen "could be considered a whistle-blower." Wooditch instructed Costello to do so and Costello found only one other vacancy at Steen's GM–13 level, in New York City. Wooditch offered Steen the position as an alternative to Los Angeles.

A week later, Steen called Wooditch and, in Wooditch's words, complained "that he did not want to go to New York, because it was too expensive and that he did not want to live there." Wooditch, however, concluded: "Since the [Department] made a sincere effort to accommodate Mr. Steen's concern by providing him with a viable alternative, I considered the issue closed." Steen also wrote Costello, telling him that a transfer to New York would subject him to a "serious financial hardship." Costello responded that no such hardship would exist because, if Steen selected reassignment to New York, he would receive a sixteen percent salary differential along with substantial overtime.

The position Steen preferred was in the Houston office, which already had a GM–13, but had a vacancy at the GM–9, 11, or 12 level. Steen was willing to take a demotion. Although Wooditch told him to ask Costello to transfer him there directly, Steen did not do so. Instead, he applied for the vacancy on his own. Costello became aware of Steen's application, but did not transfer him there. He did not mention, or criticize Steen to Kenneth Atkins, the special agent in charge of the Dallas field office, who was responsible for filling the vacancy. Atkins did not select Steen and later testified that "he would not have

selected Steen even if Steen was the only candidate."

Costello eventually decided that Steen should not be transferred to Los Angeles and reassigned him to New York. Shortly thereafter, Steen sent a memorandum to the Director of the Department's Human Resources Division—with a copy to the Office of Special Counsel—stating that he "consider[ed] this forced relocation [to New York] to be retaliation against me resulting from my providing information to the VA Office of Inspector General during an official internal inquiry." Then, before he was due to report to New York, Steen took sick leave for "situational depression." He was on sick leave for more than a year—in November 1992 he filed for workmen's compensation—until Costello proposed his separation. In the interval Costello sought out and offered him other positions, which Steen rejected.

D. Following an investigation, the Office of Special Counsel filed complaints with the Board against Costello and Strehle, seeking disciplinary actions (under 5 U.S.C. § 1215) against them for alleged violations of the Whistleblower Protection Act, 5 § 2302(b)(8), and other statutes not relevant to this appeal. The complaint alleged that Costello and Strehle had retaliated against Steen for his complaints about Strehle. The Special Counsel also filed a complaint under 5 U.S.C. § 1214 against the Department, seeking corrective action on behalf of Steen (and another Seattle agent whose situation is irrelevant here). At the Special Counsel's request, the Board stayed Steen's reassignment and separation.

After a hearing, the administrative law judge recommended that the complaints be dismissed. In a 200–page opinion, he determined that Steen's disclosures about Strehle were not protected by the Whistleblower Protection Act (or any of the other statutes the Special Counsel relied upon) and that, in any event, Costello's actions were not taken in retaliation for the disclosures. With regard to the reassignment to Los Angeles, he held that he could not "find sufficient cause on this record to hold that any alleged disclosures by Steen, protected or otherwise, were a factor in the March 1992 directed reassignment of Steen." Regarding the transfer to New York, he concluded that there was "insufficient evidentiary support to sustain the contention that the reassignment of Steen to New York was based, even in a small part, on a retaliatory intent. To the contrary, the record evidence supports the proposition that Trodden and Costello tried to accommodate Steen when his views against being assigned to work directly under Strehle were brought to their attention and that the selection of New York was a reasonable alternative and in the best interest of Steen and the agency." Finally, the judge found that Costello's refusal to reassign Steen to Houston was based on "a managerial determination that he ... did not want two grade 13s at a resident agency."

On the Special Counsel's appeal, the Board affirmed in part and reversed in part. The Board upheld the charges against Costello. It ruled that both Steen's initial disclosures to Cole and his reiteration of those complaints to Costello during the April 1991 meeting and in his workmen's compensation filing in the fall of 1992 were protected.

With respect to the corrective action complaint, the Board ruled that the Special Counsel had proved that Steen's complaints were a "contributing factor" in Steen's reassignments to Los Angeles and to New York, and in Costello's refusal to reassign Steen to Houston, and that the Department had not clearly and convincingly shown that these actions would have been taken anyway. It found that all three employment actions were unreasonable and that Costello's justifications for them were pretextual.

The Board determined that Costello's reliance on Baci and Burleson's recommendation to reassign Steen to Los Angeles was a pretext because the Department's policy governing reassignments provided

that "reassignments will normally be made with the employees preference and with their concurrence" and that, in any event, given Costello's knowledge of Steen's relationship with Strehle, it was unreasonable to follow the recommendation. It found that Costello's explanation that he reassigned Steen to New York because he would be useful there was a pretext because New York had no greater need for an agent than any other office. Finally, the Board found that Costello's explanation for his refusal to reassign Steen to Houston—that he did not want two GM–13s in the same office and that he did not want to interfere with the hiring process—made no sense in light of Steen's willingness to accept a downgrade and Costello's directed reassignments of Steen to Los Angeles and New York. The Board accordingly reversed the administrative judge's decision and ordered corrective relief for Steen.

With respect to the disciplinary complaint—the only issue before us—the Board noted that the Special Counsel "must establish by a preponderance of the evidence that whistleblowing was a significant factor in the allegedly retaliatory action." The Board noted that it had already

> concluded that the reasons on which Costello based the reassignment of Steen to Los Angeles were not supported in the record. Although the Baci/Burleson report recommended the reassignment of Steen, the report was only in draft form at the time of the reassignment and the recommendation was based on an incorrect interpretation of the [Inspector General's] personnel policy manual. Further, Costello knew about Steen's clearly expressed fears of retaliation by Strehle because of his disclosures. Similarly, we found unpersuasive and not supported by record evidence Costello's reasons for subsequently reassigning Steen to New York and for failing to reassign him to Houston.

Based on our review of the record and our findings made in this decision, we conclude that the evidence does not show that Costello would have made the same personnel decisions in the absence of protected conduct. Therefore, Steen's protected disclosures were a significant factor in Costello's decisions to take the personnel actions at issue here. Accordingly, the disciplinary action is warranted for Costello.

The Board concluded that an appropriate penalty for the violations it held Costello had committed was to suspend him for 30 days, which it did.

Member Amador, dissenting in part, was of the view that (1) the Department "has shown, by clear and convincing evidence, that it would have proposed the reassignment of Steen to Los Angeles even in the absence of the protected disclosure," and (2) that the Special Counsel had not "shown, by a preponderance of the evidence, that reprisal was a significant factor in Costello's decisions to reassign the appellant to New York and deny his request to be reassigned to Houston."

## II

■■■■ The Whistleblower Protection Act provides that no personnel action may be taken against an employee or applicant

> because of ... any disclosure to the Special Counsel, or to the Inspector General of an agency·or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences ... a violation of law, rule, or regulation.

5 U.S.C. § 2302(b)(8). For purposes of a disciplinary complaint, a personnel action is taken "because of" a protected disclosure where "the protected disclosure[ ] w[as] a 'significant factor' in [the decision to take] the personnel action." *Eidmann v. Merit Sys. Protection Bd.*, 976 F.2d 1400, 1407 (Fed.Cir.1992). Although the parties disagree about the proper interpretation of the "significant factor" test, we need not decide the question because on

this record Steen's disclosures were not shown to have been a "significant factor" in Costello's decisions under any of those interpretations.

In its brief the Special Counsel accurately described the Board's reasoning as follows: "[G]iven the fact of Mr. Steen's whistleblowing, Mr. Costello's expressed bitterness towards Mr. Steen, and the lack of any legitimate reason for Mr. Costello's actions, the [B]oard ... drew an inference that a significant factor in Mr. Costello's actions towards Mr. Steen was retaliation for whistleblowing." Under the facts of this case, the inference cannot stand.

A. The evidence here does not show that Costello's decisions to transfer and refuse to transfer Steen had anything to do with Steen's disclosures about Strehle. When Steen made his original disclosures to Cole in January 1990, Costello was not even an employee of the Department. He was not appointed as Assistant Inspector General until November 1990, 10 months after those disclosures. Indeed, Costello's boss, Trodden, was not even the Inspector General at the time of the disclosures.

There is no evidence that Costello was a friend of Strehle, the subject of the disclosures. Nor does the record suggest any other reason why Costello would want to support or defend Strehle.

When confronted with the complaints regarding Strehle, Costello took appropriate action. He met with Strehle and told him that he had no problem with hard taskmasters but would not tolerate "a ranting raving lunatic that screams and yells and demeans and curses." He then met with the Seattle agents (including Steen), who merely repeated their prior complaints about what Steen had done before Costello joined the agency. Although he declined to take action on complaints preceding his tenure, Costello proposed to act as a mediator in the agents' dispute with Strehle. While it was not the relief they desired, the agents expressed their appreciation for Costello's efforts.

Costello's initial transfer of Steen, the reassignment to Los Angeles, did not take place until March 1992, more than two years after Steen had made his protected disclosures to Cole. Although Steen repeated his charges against Strehle at the meeting between Costello and the agents in April 1991 and in his application for workmen's compensation benefits in November 1992, the primary focus in determining whether Costello acted in retaliation against the disclosures should be on the basic disclosure, not its subsequent repetition. A two-year gap between the disclosures and the allegedly retaliatory action is too long an interval to justify an inference of cause and effect between the two, especially when Costello transferred Steen only after receiving a draft of the Baci–Burleson report, recommending that because the Seattle office was overstaffed, Steen's position and one other should be transferred to Los Angeles. Although the Board discounted that fact because the final report was not issued until a month later, the fact that the document Costello received was only a preliminary draft is irrelevant in determining the reason for Costello's decision to transfer Steen to Los Angeles.

Costello's subsequent transfer of Steen to New York did not even originate with Costello. It occurred after Steen had complained to Wooditch (the Inspector General's executive assistant) about the Los Angeles transfer, the Inspector General suggested that another location be found for Steen, and Wooditch instructed Costello to do so. New York apparently was the only office other than Los Angeles with a vacancy at Steen's grade.

Steen never asked Costello for a transfer to Houston. Although Costello did not reassign Steen there, he remained neutral and did not prevent Steen from seeking the job. It was the Houston office that rejected Steen's application for the position there.

B. The Board and Special Counsel rely on snippets of evidence that allegedly show that in transferring and refusing to transfer Steen, Costello was acting in reprisal

for Steen's disclosures to Cole. These include Costello's testimony that he recalled the meeting with the Seattle agents "bitterly" and testimony by John Clarkson (the Deputy Assistant Inspector General for Investigations) that Costello said that it was "New York or nothing" for Steen and that Costello was "jerking [Steen] around" when he refused to transfer him to Houston. Although these statements may indicate that Costello was annoyed with Steen and was treating him firmly (or even harshly), they do not support the conclusion that the reason for that attitude and treatment was Steen's disclosures to Cole. The fact that the disclosures were made before Costello joined the agency and the lack of any documented reason why Costello would have wanted to punish Steen for whistleblowing not against himself but against a subordinate whom Costello was not shown to have favored, all point in the opposite direction.

Costello's actions with respect to transferring and refusing to transfer Steen might be criticized as reflecting poor management judgment, but on this record they cannot properly be viewed as taken in retaliation for Steen's disclosures to Cole. The Board's finding that Costello's asserted reasons for his transfer actions were pretextual does not justify the inference that those actions were taken in retaliation for Steen's protected disclosures.

C. In sum, the Board's determination that Costello transferred Steen to Los Angeles and New York and refused to transfer him to Houston "because of" Steen's protected disclosures about Strehle, is not supported by substantial evidence.

### III

 The remaining question is whether the Special Counsel or the Board is the proper respondent in this court.

The petition for review named the Special Counsel as the respondent. The Board was permitted to intervene. The Special Counsel moved to reform the caption to make the Board the respondent. A motions judge denied the motion. He denied the Special Counsel's request for reconsideration "at this time," but stated that because the issue was of first impression, the "better course" was to allow the parties to present arguments on it in their briefs.

Both the Special Counsel and the Board have briefed the issue, and both argue that the Board, not the Special Counsel, is the proper respondent. Costello, however, argues that the Special Counsel is the proper respondent—although it is difficult to understand his interest in the issue, since however it is decided, the result would not affect the relief he seeks.

Because the question of the proper respondent in a case in which the Board's exercise of its original (as distinguished from its appellate) jurisdiction is challenged is novel and important, it is appropriate for us to decide the issue here. As we have noted:

> Ensuring that the correct party is the respondent to a petition for review is not just a procedural technicality. Having the proper respondent, and thus the proper caption, "determines which agency and whose lawyers—and therefore whose policy and practices—are represented in the appeal."

*Schall v. United States Postal Serv.*, 73 F.3d 341, 343 (Fed.Cir.1996) (quoting *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 683 (Fed.Cir.1992)).

We agree with both agencies that the Board, and not the Special Counsel, is the proper respondent in this case. Accordingly, we will change the caption to show the Board as respondent and the Special Counsel as intervenor.

A. Our analysis of the issue begins with the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978 Act), which created the Board and established its appellate procedures. Section 205 of the 1978 Act added 5 U.S.C. 7703(a)(2), which provided that:

> The Board shall be the named respondent in any proceeding brought pursu-

ant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision issued by the Board under section 7701. In review of a final order or decision issued under section 7701, the agency responsible for taking the action appealed to the Board shall be the named respondent.

Section 7701 deals with Board review of agency personnel actions, *i.e.*, where the Board exercises its appellate jurisdiction. *See Spruill,* 978 F.2d at 683.

The statute thus provided that when the Board decision involved the Board's appellate jurisdiction, *i.e.,* reviewing an agency personnel action, the agency and not the Board would be the respondent. The legislative history of these provisions confirm this conclusion:

> [W]hen judicial review is sought of an agency action appealed to the Board under Section 7701, the aggrieved employee or applicant should bring the suit against the agency that took the personnel action in question, not the Board.... When the Board orders actions under any other sections, such as the imposition of a fine in a disciplinary action, under Section 1207 [now 5 U.S.C. § 1215] ... the suit would, of course, be against the Board itself.

S.Rep. No. 95–969, at 62 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2784.

If the 1978 Act provision covered this case, without question the Board would be the proper respondent. The only exception to the general requirement that the Board be the respondent was if review were sought of a Board order issued under Section 7701. The Board's order in this case, however, was issued under 5 U.S.C. § 1215, not under Section 7701.

B. In the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (1989 Act), Congress amended § 7703(a)(2) to delete the reference to Board actions under § 7701. Section 7703(a)(2) now reads as follows:

> The Board shall be named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.

The legislative history shows that Congress made this change in § 7703(a)(2) to overrule this court's decision in *Hagmeyer v. Dept. of the Treasury,* 852 F.2d 531 (Fed.Cir.1988). *See Amin v. Merit Sys. Protection Bd.,* 951 F.2d 1247, 1250–51 (Fed.Cir.1991). In *Hagmeyer,* the court *en banc* held that in review of a Board denial of attorney's fees, the agency and not the Board was the proper respondent. *See* 852 F.2d at 539. In so holding, the court overruled its prior decision in *Hopkins v. Merit Systems Protection Board,* 725 F.2d 1368 (Fed.Cir.1984), which held that the Board was the proper respondent in such cases. In *Hagmeyer,* the court also "adopted the position espoused by [the Department of] Justice that in an appeal to this court from a final order or decision under section 7701, the employing agency is the proper respondent." 852 F.2d at 539. Congress in turn acted to

> reverse the *Hagmeyer* decision and provide the Board with the litigating authority established under *Hopkins* and similar decisions. The bill would provide that the Board be the respondent in appeals involving jurisdictional and procedural matters, which are matters purely within the Board's jurisdiction, which [sic, while] the employing agency would be the respondent in cases involving the underlying personnel action or attorney's fees.

*Amin,* 951 F.2d at 1251 (quoting S.Rep. No. 100–413, at 21–22 (1988)). The Senate Report also noted:

> Section 12 amends 7703(a)(2) of USC 5 to provide that the relevant agency be the named respondent in employee appeals of Board decisions where the appeal involves the underlying personnel action or a request for attorney fees. In

appeals involving procedural or jurisdictional matters, the Board would be the respondent.

S.Rep. No. 100–413, at 36.

Nothing in the language of the amended § 7703(a)(2) or its legislative history indicates that in making that change Congress intended to alter the well-settled rule that where the judicial challenge to the Board's decision related solely to the Board's non-appellate function, the Board is the proper respondent.

Moreover, as noted above, amended § 7703(a)(2) makes the Board the respondent unless review is sought of "a final order or decision on the merits on the underlying personnel action . . . in which case the agency responsible for taking the personnel action shall be the respondent." For the Special Counsel to be the proper respondent, it would have to be "the agency responsible for taking the [underlying] personnel action."

The only "personnel action" the Special Counsel took was filing a petition with the Board to discipline Costello for his alleged violations of the Whistleblower Protection Act, and to obtain corrective action. In his petition to review here, the only "personnel action" Costello challenged was that of the Board, namely, its decision that he committed the charged violations and imposing a penalty. He did not challenge the Special Counsel's initiation of the administrative proceeding before the Board.

The Board was the trial tribunal. It received and evaluated the evidence, decided whether Costello violated the Whistleblower Protection Act and upon concluding that he did, determined the appropriate penalty. The injury Costello suffered resulted directly from the action of the Board not from the action of the Special Counsel. Moreover, since the merits issues before us all relate solely to what the Board did, the Board is the appropriate agency to defend its decision. See Amin, 951 F.2d at 1252 ("the agency which took the personnel action has the primary interest in upholding its position and has available the material needed to defend its

personnel actions in the appeals to this court").

The Board comes squarely within the language of § 7703(a)(2) that it "shall be named respondent in any proceeding brought pursuant to this subsection," and does not come within the exception.

C. Our conclusion finds support in our prior decisions in this area.

In *Amin*, we held that the employing agency and not the Board was the proper respondent where review was sought of Board rulings rejecting claims that the agency had breached a settlement agreement. See 951 F.2d at 1253–54. The court stated:

> When the 1989 Act is examined in connection with the legislative history, we think it is abundantly clear that in overruling *Hagmeyer*, Congress intended that the Board shall be the respondent in all appeals involving its jurisdiction or its rulings on procedural questions, but that in appeals involving underlying personnel actions and attorney fees, the employing agencies should be the respondents. The dichotomy thus established by Congress is in accord with the traditional statutory functions of the Board and the employing agencies. In enacting the amended version of § 7703(a)(2), Congress recognized that the Board has a much greater interest in questions of its jurisdiction and procedure and is better equipped than the agencies to defend its position in appeals involving these questions.

951 F.2d at 1251. The court then held that "the denial of a petition for review of a settlement agreement is a decision on the merits of the underlying personnel action [and not] a decision raising pure jurisdictional or procedural questions." *Id.* at 1252.

*Spruill* involved an individual right-of-action proceeding in which an employee challenged before the Board a penalty his agency imposed on him for what he contended were whistleblowing activities. See 978 F.2d at 680–81. The Board dismissed

Spruill's petition for lack of jurisdiction. *See id.* at 680. We held that the Board and not the agency was the proper respondent in the employee's challenge in this court to the Board's rejection of his claim. *See id.* at 689. We stated:

> If the issue on appeal is solely one of the procedure or jurisdiction of the MSPB, then the proper respondent is the MSPB. If the issue is solely the merits of the underlying agency action, the agency is the proper respondent. If the case raises a mixture of these issues, *i.e.,* if the merits of the agency action are reached by the MSPB, and at the same time a matter of important MSPB procedure or jurisdiction is involved, *Amin* teaches that the employing agency is the proper respondent.

*Id.* at 686.

These cases are not controlling because Costello's challenge to the Board's decision does not raise jurisdictional or procedural questions relating to the Board's action. It challenge the merits of that action. The reasoning of those cases, however, supports our conclusion that the Board is the proper respondent here. Costello challenges "the merits of the agency action," and the agency whose action he challenges is the Board. The Board, therefore, is the proper respondent.

■ D. In sum, we hold that where the Board decision under review was made in the exercise of the Board's original jurisdiction under Section 1215, in response to a complaint filed by the Special Counsel, the Board is the proper respondent.

## CONCLUSION

The portions of the decision of the Merit Systems Protection Board that (1) held that Costello violated the Whistleblower Protection Act by transferring Steen to Los Angeles and New York and refusing to transfer him to Houston, and (2) suspended him for 30–days for those violations, are

*REVERSED.*