NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3214

GENE M. AUSTON,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF VETERANS AFFAIRS,

Intervenor.

Gene M. Auston, of Evanston, Illinois, pro se.

Jeffrey A. Gauger, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were James M. Eisenmann, General Counsel, and Keisha Dawn Bell, Deputy General Counsel.

Roger A. Hipp, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3214

GENE M. AUSTON,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF VETERANS AFFAIRS,

Intervenor.

On petition for review of the Merit Systems Protection Board in CH1221090041-W-1.

_____

DECIDED: April 14, 2010

_____

Before MICHEL, Chief Judge, CLEVENGER and PROST, Circuit Judges.

PER CURIAM.

Petitioner Gene M. Auston petitions for review of the final decision of the Merit Systems Protection Board ("Board"), dismissing his individual right of action ("IRA") appeal under the Whistleblower Protection Act ("WPA") for lack of jurisdiction. Auston v. Dep't of Veterans Affairs, No. CH1221090041-W-1 (M.S.P.B. May 27, 2009) ("Final Order"). We affirm.

BACKGROUND

Mr. Auston is a Clinical Nurse Manager who was assigned as chief of the Sterile Processing Department ("SPD") at the Edward Hines, Jr. VA Hospital. On April 21, 2008, Alton Alexander ("Alexander"), Mr. Auston's supervisor, issued a notice proposing to reprimand Mr. Auston for his failure to comply with scheduling instructions, as well as inappropriate, disrespectful conduct at a meeting with Alexander on February 22, 2008. Alexander eventually reprimanded Mr. Auston for the reasons stated in the notice of proposed reprimand. Later, after an unfavorable review of the SPD, Alexander temporarily detailed Mr. Auston to another department on July 23, 2008.

On July 28, 2008, Mr. Auston filed this IRA appeal with the Board, alleging that the Department of Veterans Affairs ("Agency") reprimanded and detailed him in retaliation for making disclosures protected under the WPA. The Board dismissed the appeal, without prejudice to re-file, in order to allow Mr. Auston to exhaust his administrative remedies before the Office of Special Counsel ("OSC").

Mr. Auston then filed an OSC complaint, which asserted that the Agency had retaliated against him "for requesting additional manpower and disclosing to management the threat of unsafe conditions and possible noncompliance with VA 7176 Directive and JACHO standards from the agency's failure to adequately staff [his] division." Respt.'s App. 27. On September 30, 2008, the OSC informed Mr. Auston that the OSC had ended its inquiry into his allegations, as Mr. Auston failed to provide any information, other than his personal belief, connecting his reprimand and detail to his alleged whistleblowing activity. The OSC further informed Mr. Auston that he now had the right to seek corrective action from the Board.

On October 5, 2008, Mr. Auston re-filed his IRA appeal with the Board, asserting that the Agency retaliated against him because of protected disclosures, made as late as his February 2008 meeting with Alexander. In an initial decision dated January 9, 2009, the administrative judge dismissed Mr. Auston's IRA appeal for lack of jurisdiction on two grounds. Auston v. Dep't of Veterans Affairs, No. CH1221090041-W-1, slip op. at 2, 9 (M.S.P.B. Jan. 9, 2009) ("Initial Decision"). First, as to Mr. Auston's alleged disclosure of a staffing inadequacy in the SPD in 2005, the administrative judge found that Mr. Auston had not made a non-frivolous allegation that this disclosure was protected under the WPA, which is required for the Board to have jurisdiction over an IRA appeal. Id. at 5-7. Second, with respect to the disclosures Mr. Auston allegedly made after 2005, the administrative judge explained that the documentation Mr. Auston submitted showed that the only disclosure at issue in his OSC complaint was made two-and-a-half years before his reprimand and detail, i.e., in approximately late November 2005. Id. at 2 & n.1, 8. Therefore, the administrative judge concluded that, with respect to any alleged disclosure made after 2005, Mr. Auston had not shown that he exhausted his administrative remedies with the OSC, as required for the Board to have jurisdiction to consider these disclosures. Id. at 7-8.

On May 27, 2009, the Board denied Mr. Auston's petition for review of the initial decision. Final Order, slip op. at 1-2. The initial decision therefore became the final decision of the Board. Id. Mr. Auston petitioned for review of the Board's final decision in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review decisions of the Board regarding its own jurisdiction without

deference. Kahn v. Dep't of Justice, 528 F.3d 1336, 1341 (Fed. Cir. 2008). "[T]he Board has jurisdiction over an IRA appeal if the appellant has exhausted his or her remedies before the OSC and makes non-frivolous allegations that[:] (1) he or she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8)[, the WPA,] and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action . . . ." Id. Before the Board, the appellant bears the burden of establishing the Board's jurisdiction. Id.

I

Mr. Auston does not expressly dispute the Board's finding that he did not exhaust his administrative remedies with the OSC with respect to any disclosures made after 2005. Instead, Mr. Auston contends that even if he has not exhausted such remedies, he—at a minimum—made a good faith attempt to do so.

Under 5 U.S.C. § 1214(a)(3), an employee must seek corrective action from the OSC, i.e., exhaust his or her administrative remedies before the OSC, prior to seeking corrective action from the Board. See 5 U.S.C. § 1214(a)(3); Ward v. Merit Sys. Prot. Bd., 981 F.2d 521, 526 (Fed. Cir. 1992). As a result of this requirement, the Board, in an IRA appeal involving allegedly protected disclosures under the WPA, does not have jurisdiction to consider any alleged disclosure that the employee failed to raise in a complaint before the OSC. See Ward, 981 F.2d at 526.

Here, the Board properly concluded, based on the documentary evidence provided, that although Mr. Auston's re-filed IRA appeal alleged that he made protected disclosures as late as February 22, 2008, he had not met his burden to show that he exhausted his administrative remedies before the OSC with respect to any disclosure

made after 2005. Upon receiving Mr. Auston's IRA appeal, the Board ordered Mr. Auston to allege the date of every protected disclosure in addition to whether he sought corrective action from the OSC with respect to each disclosure, and to submit to the Board "a copy of the request made to the OSC" as well as any letters from the OSC informing him of his right to proceed before the Board. Auston v. Dep't of Veterans Affairs, No. CH1221090041-W-1 (M.S.P.B. Oct. 17, 2008). Mr. Auston responded by filing a jurisdictional statement in which he summarily stated that he had "exhausted all administrative remedies" and submitting documentation regarding the OSC's processing of his complaint, but not the OSC complaint itself. Respt.'s App. 41; Auston v. Dep't of Veterans Affairs, No. CH1221090041-W-1 (M.S.P.B. May 27, 2009). Without Mr. Auston's OSC complaint, the Board was forced to rely on correspondence from the OSC to Mr. Auston to determine whether his OSC complaint raised all of the disclosures he asserted in his IRA appeal.

An OSC letter to Mr. Auston, dated September 16, 2008, states that "information in [Mr. Auston's] complaint indicates that [he] made the[] disclosures, and claimed whistleblower status, two and a half years before [his] letter of reprimand (4/21/08) and detail (7/23/08)." Respt.'s App. 28; see Initial Decision, slip op. at 2 & n.1, 8. The OSC's correspondence with Mr. Auston does not mention any disclosure other than those made two-and-a-half years before his reprimand and detail. In fact, the OSC relied on the "lack of proximate timing" between Mr. Auston's alleged disclosures and his later reprimand and detail in finding it unlikely that the Agency took unfavorable personnel actions against Mr. Auston as a result of disclosures made two-and-a-half years earlier. Respt.'s App. 28. The OSC closed its inquiry into Mr. Auston's

allegations because, without evidence suggesting otherwise, the disclosures at issue were too distant in time to support an inference of retaliation. See Respt.'s App. 27, 32.

Based on this documentary evidence, the Board properly determined that the only disclosures at issue in Mr. Auston's OSC complaint were made two-and-a-half years before April 2008, i.e., in approximately November 2005. See Initial Decision, slip op. at 2 & n.1, 7-8. Given that the requirements of 5 U.S.C. § 1214(a)(3) prevent the Board from having jurisdiction to consider any disclosure that Mr. Auston did not raise in his OSC complaint, the Board correctly concluded that it did not have jurisdiction to consider any disclosure made after 2005. Mr. Auston's "good faith attempt" to exhaust his administrative remedies is insufficient to overcome this jurisdictional defect.

Accordingly, we affirm the Board's determination that the Board lacked jurisdiction over any disclosure made after 2005.

II

The Board found that it lacked jurisdiction over the disclosures Mr. Auston raised before the OSC, namely his 2005 disclosure of possible noncompliance with Agency standards and the threat of unsafe conditions due to inadequate staffing in the SPD, for an alternative reason. See Respt.'s App. 27; Initial Decision, slip op. at 5-8. Specifically, the Board found that Mr. Auston did not "identify a substantial and specific danger to public health or safety" and thus had not made a non-frivolous allegation that these disclosures were protected under the WPA. See Initial Decision, slip op. at 5-8.

Although Mr. Auston does not dispute this holding, the Agency, as Intervenor, suggests that remand on the issue may be in order because the Board did not discuss our recent decision in Chambers v. Department of the Interior, 515 F.3d 1362 (Fed. Cir.

2008), where we identified factors relevant to determining whether a disclosed danger is sufficiently substantial and specific to be protected under the WPA.[1] The Agency reasons that because it is unclear whether the Board considered the Chambers factors in finding that Mr. Auston failed to identify a "substantial and specific danger to public health or safety," the issue should be remanded to the Board with instructions to discuss these factors. Despite the Board's failure to explicitly refer to Chambers, we conclude that the Board correctly found that Mr. Auston failed to make non-frivolous allegations that his disclosures were protected under the WPA.

The WPA protects an employee from an unfavorable personnel action taken because of a protected disclosure. See Drake v. Agency for Int'l Dev., 543 F.3d 1377, 1380 (Fed. Cir. 2008). The WPA defines a protected disclosure as "any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences– (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ." 5 U.S.C. § 2302(b)(8); Drake, 543 F.3d at 1380 (quoting 5 U.S.C. § 2302(b)(8)). In Chambers, we held that the Board erred in analyzing disclosures relating to public health or safety under the test applicable to disclosures of

---

[1] The Agency argues that we do not need to address this issue if we affirm the Board's finding that Mr. Auston failed to exhaust his administrative remedies. However, the Board determined that Mr. Auston did not exhaust his administrative remedies only with respect to disclosures made after 2005. Initial Decision, slip op. at 7-8. The Board's conclusion that it did not have jurisdiction on this ground therefore did not cover the disclosures that Mr. Auston made in 2005. As such, though we have affirmed the Board's holding with respect to administrative remedies, we must address the Board's additional holding that it lacked jurisdiction to consider the disclosures made in 2005 because Mr. Auston did not make a non-frivolous allegation that they were protected under the WPA.

gross mismanagement, which is referred to as the <u>White</u> standard.[2]  <u>Chambers</u>, 515 F.3d at 1368-69; <u>see</u> <u>Chambers v. Dep't of the Interior</u>, 103 M.S.P.R. 375, 387-88 (2006) ("<u>Chambers I</u>"), <u>vacated in relevant part</u>, 515 F.3d 1362.  We concluded that, for aspects of the disclosures that were directed to public health or safety, the Board should have determined whether the appellant disclosed information that she "reasonably believed evidenced a substantial and specific danger to public safety," rather than merely analyzing the disclosures under the standard for "gross mismanagement." <u>Chambers</u>, 515 F.3d at 1368.  We emphasized that, to be protected under the WPA, the involved danger "must be substantial and specific," as opposed to "negligible," "ill-defined," or "only potentially arising in the future . . . ." <u>Id.</u> at 1369.  We then referred to a "variety of factors" that guide the determination of whether "a disclosed danger is sufficiently substantial and specific to warrant protection under the WPA," including the likelihood of the harm, when the alleged harm may occur, and the nature of the harm. <u>Id.</u>

The Agency is therefore correct that <u>Chambers</u> identified a number of factors relevant to whether a danger to public health or safety is sufficiently substantial and specific to be protected under the WPA.  Nothing in our <u>Chambers</u> decision, however, mandates that the Board must explicitly discuss each of these factors in determining whether a disclosure involves a "substantial and specific danger to public health or safety" under the WPA.  Therefore, the Board's failure to expressly reference the <u>Chambers</u> factors is not, in itself, erroneous.

---

[2]      Under the <u>White</u> standard, a policy constitutes "gross mismanagement" only if a conclusion that the agency erred "is not debatable among reasonable people." <u>White v. Dep't of the Air Force</u>, 391 F.3d 1377, 1383 (Fed. Cir. 2004).

The Board's analysis is consistent with the <u>Chambers</u> decision, as well as the rest of our case law interpreting disclosures that involve a "substantial and specific danger to public health or safety." Applying the "substantial and specific" standard drawn from the statutory language itself and reiterated throughout our case law, including <u>Chambers</u>, the Board found that Mr. Auston did not "identify a substantial and specific danger to public health or safety." <u>Initial Decision</u>, slip op. at 6-7; <u>see</u> <u>Chambers</u>, 515 F.3d at 1368-69; <u>Herman v. Dep't of Justice</u>, 193 F.3d 1375, 1379 (Fed. Cir. 1999). Unlike the Board decision vacated in <u>Chambers</u>, which relied exclusively on the <u>White</u> standard—applicable only to disclosures of "gross mismanagement"—in finding that the disclosures at issue did not evidence a "substantial and specific danger to public health or safety," the Board here, though it cited to <u>White</u>, did not apply the <u>White</u> standard in reaching this determination. <u>See</u> <u>Initial Decision</u>, slip op. at 6-7; <u>see also</u> <u>Chambers</u>, 515 F.3d at 1366; <u>Chambers I</u>, 103 M.S.P.R. at 387-88. Rather, the Board's reasoning addresses several of the <u>Chambers</u> factors, even though the Board did not expressly frame its analysis around them. As to when the alleged harm may occur, <u>Chambers</u> stressed that the WPA does not protect the disclosure of a danger that is "remote" or "only potentially arising in the future." <u>Chambers</u>, 515 F.3d at 1369; <u>see</u> <u>Herman</u>, 193 F.3d at 1379. In this case, the Board reasoned that, despite Mr. Auston's submission of sterilization policies, he did not identify any policy breach or "impending breach" of a policy. <u>Initial Decision</u>, slip op. at 6. With respect to the likelihood of the harm, <u>Chambers</u> explained that a disclosure is not protected under the WPA if the disclosed danger "could only result in harm under speculative or improbable conditions . . . ." <u>Chambers</u>, 515 F.3d at 1369. Here, the Board objected to Mr.

Auston's failure to make specific allegations that the alleged understaffing in the SPD was resulting in unhygienic equipment. Initial Decision, slip op. at 6. The Board emphasized that Mr. Auston's "general reliance on VA 7176," which details the sterilization requirements for the Agency's hospitals, cannot cure the lack of specificity of his allegations. Id. The Board's analysis shows that Mr. Auston's disclosure was too vague and speculative to constitute a "substantial and specific danger to public health or safety." Cf. Johnston v. Merit Sys. Prot. Bd., 518 F.3d 905, 910 (Fed. Cir. 2008) ("[Appellant] disclosed a very specific and substantial danger."). As such, Mr. Auston failed to allege facts that, if proven, could demonstrate a reasonable belief that the alleged understaffing of his department presents a "substantial and specific danger to public health or safety."

Accordingly, we affirm the Board's finding that it lacked jurisdiction over the disclosures Mr. Auston made in 2005.

III

Mr. Auston also asserts that the Board erred in dismissing his appeal without allowing him discovery. He contends that the Board's improper refusal to allow him discovery, as well as the Agency's refusal to tender discovery, left him without information he needed to proceed on his cause of action, thereby preventing a fair adjudication of his case. We understand Mr. Auston to be objecting to the Board's failure to address his motions to compel discovery, filed after the Agency's motion to dismiss, before the Board dismissed his appeal for lack of jurisdiction.

Procedural matters relative to discovery fall "within the sound discretion of the [B]oard." Barrett, 309 F.3d at 786. We will not overturn the Board "on such matters

unless an abuse of discretion is clear and harmful." Id. To prevail on a discovery issue under this standard, a petitioner bears "the burden of demonstrating both that the Board abused its discretion and that the error could have affected the outcome of [the] case by causing substantial harm or prejudice to [the petitioner's] rights." Id.

Although Mr. Auston objects to the Board's failure to afford him the discovery he requested, he does not show how the Board abused its discretion in failing to afford him discovery or how having the requested discovery may have led to an outcome other than the dismissal of his appeal for lack of jurisdiction. Rather, Mr. Auston's only support for his argument that the Board erred in refusing to grant discovery is his inclusion, in both his "Sur-Reply" and "Sur-Sur-Reply," of various documents to which he allegedly did not have access as a result of the Board's failure to grant his discovery requests.[3] Upon careful review of these documents, we conclude that discovery of the documents would not have assisted Mr. Auston in countering the two grounds on which the Board dismissed his appeal for lack of jurisdiction, namely the lack of non-frivolous allegations that his disclosures were protected under the WPA and his failure to show that he raised his post-2005 disclosures before the OSC. Most of the documents do not address Mr. Auston's alleged disclosures or his OSC complaint, and therefore are entirely irrelevant to the two grounds for dismissal. Of the documents that touch upon Mr. Auston's alleged disclosures, none refer to a disclosure unaddressed by the Board

---

[3]     Our review of these documents reveals that most are letters, emails, or other documents written by or sent to Mr. Auston. Thus, it is unclear how Mr. Auston was not in possession of these documents or was unable to access them without discovery. We need not address this issue, however, because even assuming that the lack of discovery prevented him from accessing these documents, he has not shown that the Board erred in dismissing his appeal without affording him discovery of the documents.

or clarify the disclosures that the Board addressed. Furthermore, the one document relevant to Mr. Auston's OSC action does not suggest that he brought his post-2005 disclosures before the OSC. Because the documents would not have altered the Board's two grounds for dismissal of Mr. Auston's IRA appeal, we conclude that Mr. Auston has not met his "heavy burden" to show that the alleged discovery error could have affected the outcome of his appeal by causing substantial harm or prejudice to his rights. See Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1378-79 (Fed. Cir. 1988).

IV

Finally, Mr. Auston argues that the Board erred in dismissing his IRA appeal for lack of jurisdiction without holding a "fair and impartial hearing." An appellant is not entitled to a hearing unless he presents a non-frivolous allegation that the Board has jurisdiction over his appeal. Herman, 193 F.3d at 1382; see Ward, 981 F.2d at 525. Because "[t]he determination of whether an allegation of jurisdiction is non-frivolous is made based entirely on the written record," a hearing on the issue of the Board's jurisdiction is "unnecessary." Kahn, 528 F.3d at 1341.

Here, although Mr. Auston requested a hearing, he was not entitled to one because the record, including his allegations and the documentary evidence, failed to present a non-frivolous allegation that the Board had jurisdiction over his appeal. Specifically, Mr. Auston did not allege facts that, if proven, may establish that his disclosures were protected under the WPA and failed to provide any evidence that he presented his post-2005 disclosures to the OSC. As such, the administrative judge properly resolved the jurisdictional issue based on the written record and denied Mr. Auston's request for a hearing.

## CONCLUSION

For the reasons set forth above, we affirm the Board's dismissal of Mr. Auston's IRA appeal for lack of jurisdiction.

## COSTS

Each party shall bear its own costs.