NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID P. MARANA,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2021-1463

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-20-0543-W-1.

---

Decided: January 20, 2022

---

DAVID P. MARANA, Evans, GA, pro se.

DEANNA SCHABACKER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent. Also represented by TRISTAN L. LEAVITT, KATHERINE MICHELLE SMITH.

---

Before MOORE, *Chief Judge*, BRYSON and DYK, *Circuit Judges*.

PER CURIAM.

David P. Marana seeks review of an order of the Merit Systems Protection Board dismissing his Individual Right of Action ("IRA") appeal for lack of jurisdiction. We affirm in part and remand in part.

I

Mr. Marana was employed as a nurse at the Dwight David Eisenhower Army Medical Center at Fort Gordon, Georgia. In February 2019, he sent an email containing a patient's name, partial social security number, and medications to various persons who were not authorized to receive that information. Following that action, the agency suspended Mr. Marana's access to electronic health records and conducted an investigation of the incident. In May 2019, the agency proposed to remove Mr. Marana for conduct unbecoming a federal employee in connection with his inappropriate disclosure of personal health information. He was removed from his position in June 2019.

Mr. Marana subsequently filed a whistleblower retaliation complaint with the Office of Special Counsel ("OSC") regarding his suspension and removal. In March 2020, the OSC closed its investigation into his complaint without taking action. In its closing letter, the OSC identified six disclosures that Mr. Marana had alleged in his OSC complaint as the basis for his whistleblower retaliation complaint. Those disclosures were: (1) reporting problems with recordation and infection control at the hospital; (2) informing the agency that his position could be performed by a nurse or administrative assistant with a lower GS rating; (3) accusing the Chief of Medical Management of denying care to patients; (4) complaining to supervisors about alleged favoritism in the Medical Evaluation Board process; (5) raising concerns about the treatment of "against medical advice" patients; and (6) making disclosures about the sterilization of flexible endoscopes.

Mr. Marana filed his IRA appeal with the Merit Systems Protection Board in May 2020. The administrative judge who was assigned to the case required Mr. Marana to file a statement establishing Board jurisdiction by showing that he had exhausted his administrative remedies with the OSC and that his allegations of retaliation for whistleblowing were non-frivolous.

Mr. Marana, proceeding pro se, filed a large number of documents in response to the administrative judge's initial order and a follow-up order in which the administrative judge directed him to provide a more specific and concise account of each of his alleged disclosures. Among those submissions, Mr. Marana provided additional details regarding the six disclosures set forth in the OSC's closing letter.

In October 2020, the administrative judge issued a decision dismissing Mr. Marana's IRA appeal for lack of jurisdiction. The administrative judge ruled that Mr. Marana had exhausted his remedies with the OSC with regard to the six disclosures identified in the OSC's closing letter, and that he had non-frivolously alleged that he had been subjected to covered personnel actions (1) when his access to electronic health records was suspended, (2) when the agency proposed his removal, and (3) when it removed him. With respect to the six identified disclosures, however, the administrative judge found that Mr. Marana had failed to show that the Board had jurisdiction over his appeal.

In particular, the administrative judge found that Mr. Marana had failed to make a non-frivolous allegation that disclosures number 4 and number 5 constituted protected disclosures and had failed to show that disclosures number 1, 2, 3, and 6, even if protected, contributed to the personnel actions the agency took against him in 2019.

Mr. Marana has petitioned for review by this court of the decision of the administrative judge dismissing his appeal.

## II

As was the case before the administrative judge, Mr. Marana is proceeding pro se in this court, and the precise nature of the claims Mr. Marana seeks to raise is not easy to discern. The claims he presented to the OSC and renewed before the Board are set forth in the OSC's closing letter and in one of Mr. Marana's submissions to the administrative judge. *See* Supp. App'x 57–71, 134–35.

1. As noted, the administrative judge ruled that Mr. Marana failed to non-frivolously allege that disclosures number 4 and number 5 were protected under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).

The OSC characterized Mr. Marana's disclosure number 4 as follows: "you communicated to various supervisory employees of the Agency about favoritism in the Medical Evaluation Process." Supp. App'x. 134. Before the administrative judge, Mr. Marana characterized that disclosure as follows: "MEB [Medical Evaluation Board] is a Haven for soldiers; Impact Army Readiness; Need review of MEB policy and procedures." *Id.* at 67. His disclosure, he alleged, revealed "[p]ossibly abuse of MEDICAL authority at the expense of Readiness with impact on National Defense and Security." *Id.* (emphasis omitted). He added: "Essentially, Unit commanders have limited command and control over soldiers in the MEB and it impacts Unit readiness. This is a critical issue if/when soldier has motives other than genuinely wanting to perform duties as a soldier including deployment." *Id.*

The administrative judge found Mr. Marana's explanation of the significance of disclosure number 4 to be "speculative and vague," and that Mr. Marana therefore failed to show that the alleged disclosure met the standard for a

non-frivolous allegation for purposes of establishing Board jurisdiction. *Id.* at 8. We agree with that characterization. *See Garvin v. Merit Sys. Prot. Bd.*, 737 F. App'x 999, 1004 (Fed. Cir. 2018) (non-precedential); *Auston v. Merit Sys. Prot. Bd.*, 371 F. App'x 96, 102 (Fed. Cir. 2010) (non-precedential); *Smart v. Dep't of the Army*, 157 F. App'x 260, 262 (Fed. Cir. 2005) (non-precedential). Notably, Mr. Marana barely alludes to that disclosure in his brief in this court, and nothing he says on that score alters our conclusion that the administrative judge's characterization of his argument was correct.

As for disclosure number 5, the OSC characterized Mr. Marana's claimed disclosure as follows: "[y]ou communicated to the Chief of Patient Administration about your concerns with how the 'against medical advice' patients were treated by nurses, and whether the agency had adequate policy to handle them." Supp. App'x at 134. Before the Board, Mr. Marana characterized that disclosure as follows: "Coumadin clinic patient follow-up issues including backlog and patient non-compliance with treatment plan; Need for against medical advice (AMA) policy." *Id.* at 69. As noted by the administrative judge, Mr. Marana stated that the disclosure revealed "Management issues but not meet [sic] the following: (a) violation of law, rule, regulation; (b) gross mismanagement; (c) gross waste of funds; (d) abuse of authority; and/or (e) a substantial and specific danger to public health and safety." *Id.* at 8, 69. Interpreting that statement as a disclaimer that disclosure number 5 had disclosed conduct falling within the scope of the Whistleblower Protection Act, the administrative judge ruled that the disclosure did not meet the standard for a non-frivolous allegation for purposes of establishing Board jurisdiction.

It is not entirely clear that Mr. Marana intended that statement to disclaim reliance on disclosure number 5. In any event, however, even setting aside the apparent concession in his response to the Board, Mr. Marana has

offered nothing of substance to suggest that disclosure number 5 was sufficient to give rise to a viable whistleblower complaint.

2. The administrative judge found that the four remaining disclosures were not sufficient to constitute a non-frivolous showing that they contributed to the actions taken against Mr. Marana, because they all were made more than two years before the personnel actions at issue in this case. The administrative judge concluded that under the circumstances, a period in excess of two years between the disclosures and the personnel actions was too long an interval to justify an inference of cause and effect between the two events. *Id.* at 7. In addition, the administrative judge found that no other relevant factors supported a finding that those four disclosures contributed to the personnel actions taken against Mr. Marana. *Id.* at 7 n.4.

With respect to three of those four disclosures, i.e., disclosures number 1, number 3, and number 6, we agree with the administrative judge. The disclosures were remote in time from the personnel actions that Mr. Marana is challenging. *See Costello v. Merit Sys. Prot. Bd.*, 182 F.3d 1372, 1377 (Fed. Cir. 1999) ("A two-year gap between the disclosures and the allegedly retaliatory action is too long an interval to justify an inference of cause and effect between the two . . . ."); *Salinas v. Dep't of the Army*, 94 M.S.P.R. 54, 59 (2003) (the disclosure and the allegedly retaliatory act two years later were "too remote in time" for a reasonable person to conclude that the disclosure was a contributing factor to the action taken). Moreover, as the administrative judge noted, Supp. App'x at 7 n.4, the other circumstances surrounding those disclosures, i.e., the strength or weakness of the agency's reasons for taking the personnel action, whether the disclosures were personally directed at the official responsible for the adverse actions, and whether the responsible official had a motive to retaliate, were not suggestive of retaliation for whistleblowing.

The remaining disclosure, number 2, presents a different issue. The administrative judge characterized disclosure number 2 as informing the "Human Resources and Civilian Personnel Advisory Center (CPAC) that [Mr. Marana's] position 'can be performed by an appropriately trained nurse or administrative assistant with a lower GS level.'" *Id.* at 6–7. The result, Mr. Marana alleged, was "a waste and or mismanagement of government personnel funds." *Id.* at 63. In his submission to the Board, Mr. Marana also contended that disclosure number 2 revealed "Backlog of coumadin patient followup—[Dwight D. Eisenhower Army Medical Center] patient care neglect." *Id.*

The administrative judge treated disclosure number 2 in the same manner as disclosures number 1, 3, and 6, that is, as being too remote in time to support a claim of retaliation for whistleblowing. As the government acknowledges in its brief, however, the administrative judge erroneously characterized disclosure number 2 as having been made more than two years before the personnel actions against Mr. Marana. In fact, Mr. Marana alleges that he made that disclosure, among other times, shortly before the issuance of the removal letter in June 2019. Therefore, the government concedes that the timing factor cannot be relied upon to support the conclusion that disclosure number 2 fails the jurisdictional test. In addition, the government acknowledges that the medical center's Human Resources department allegedly revealed Mr. Marana's disclosure to Major Orr, the agency official responsible for taking the removal action against Mr. Marana.

The government argues that even though the administrative judge's decision with respect to disclosure number 2 cannot be sustained on the basis of the timing of the disclosure, the administrative judge's decision can be upheld on an alternative ground not invoked by the administrative judge. In particular, the government argues that the court can affirm the Board's jurisdictional dismissal on the ground that Mr. Marana failed to non-frivolously allege

that it was reasonable for him to believe that disclosure number 2 was protected.

With respect to Mr. Marana's "staffing mismatch" disclosure, the government argues that even if Mr. Marana's duties could have been performed by a lower-level employee, his disclosure "could not plausibly evidence a reasonable belief in a substantial risk of significant adverse impact on the agency's ability to perform its mission or a more-than-debatable expenditure that is significantly out of proportion with the benefit reasonably expected to accrue to the government." Appellee's Br. 19.

The government acknowledges that in his jurisdictional submission Mr. Marana alleged that his disclosure number 2 included not only a claim of "resource-wasteful staffing mismatch," but also claims of "backlog of coumadin patient followup" and "patient care neglect." *Id.* at 17–18.

With respect to Mr. Marana's claim of "backlog of coumadin patient followup," the government contends that disclosure number 2 duplicated the contents of disclosure number 5, which the Board found did not meet the standard for a nonfrivolous allegation for purposes of establishing Board jurisdiction. The government also argues that Mr. Marana did not provide specific details regarding "the nature of the backlog, the number of patients involved, or what danger the alleged backlog presented to public health and safety." *Id.* at 20–22.

With respect to the claim of "patient care neglect," the government argues that Mr. Marana failed to disclose "any specific incidents of patient neglect or the nature of the alleged neglect." *Id.* at 23. The government notes that Mr. Marana contended that patients who had received anticoagulation medicine at the medical center had been injured, had been hospitalized, or had died because of inadequate follow-up. But the government argues that in light of Mr. Marana's failure "to provide any specific details regarding his patient care neglect disclosure, he has failed to

nonfrivolously allege a reasonable belief that he disclosed a substantial and specific danger to public health and safety, or of any of the other types of covered wrongdoing." *Id.* at 23–24.

It is a general principle of administrative law that a court may not uphold an agency's decision on grounds different from those employed by the agency in the decision under review. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Although recognizing that general principle, the government invokes an exception to that principle that applies when the reviewing court can uphold the agency's decision on a purely legal basis without making any factual determination not previously made by the agency. *See Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1569 (Fed. Cir. 1993); *see also Lisanti v. Office of Pers. Mgmt.*, 573 F.3d 1334, 1340 (Fed. Cir. 2009).[1]

It is not necessary for us to decide whether an exception to the *Chenery* doctrine would permit us to decide the jurisdictional issue in this case, because we have determined that the appropriate course is for us to exercise our discretion to remand the case for the Board to address that question in the first instance. *See* 28 U.S.C. § 2106;

---

[1] An agency's ruling can also be upheld on a different ground from the one invoked by the agency if the court concludes that the agency's error was harmless, i.e., if it is clear that the agency would have reached the same ultimate result under the proper standard. *See Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020); *Grabis v. Office of Pers. Mgmt.*, 424 F.3d 1265, 1270 (Fed. Cir. 2005); *Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998); 5 U.S.C. § 706 (In conducting judicial review, "due account shall be taken of the rule of prejudicial error.").

*Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 783 (Fed. Cir. 1995).

To determine whether the Board has jurisdiction to decide Mr. Marana's whistleblower claim as to disclosure number 2, it will be necessary for the Board to determine whether Mr. Marana's disclosure went beyond allegations concerning the staffing level necessary for the duties assigned to his position and whether such allegations, if made, could be viewed as involving a reasonable belief that what he disclosed evidenced an abuse of authority, gross mismanagement, or a waste of funds. Depending on whether the other two facets of disclosure number 2 (i.e., "backlog of coumadin patient followup" and "patient care neglect") were presented to the OSC and are considered disclosures independent from the "staffing mismatch" disclosure, it may also be necessary for the Board to determine whether Mr. Marana could reasonably have believed that the failure to follow up with patients on anti-coagulants and the denial of patient care constituted a substantial danger to public health or safety.[2]

The record before us does not make resolution of those questions practicable. The administrative judge, who can obtain further submissions from the parties if necessary, is in a much better position to address those issues than we are, and we therefore remand the issues surrounding disclosure number 2 to the Board.

It is open to the administrative judge on remand to consider the government's arguments as to why disclosure number 2 is not protected. For example, the administrative judge may consider whether the "staffing mismatch"

---

[2] It is unclear from the materials before us whether Mr. Marana's "patient care neglect" allegation was separate from his allegation of a "[b]acklog of coumadin patient followup." *See* Supp. App'x 63.

disclosure is merely a disagreement with an agency policy decision that did not reflect gross mismanagement or a gross waste of funds. *See* 5 U.S.C. § 2302(a)(2)(D); *White v. Dep't of the Air Force*, 391 F.3d 1377, 1381–82 (Fed. Cir. 2004); *Hansen v. Merit Sys. Prot. Bd.*, 746 F. App'x 976, 981 (Fed. Cir. 2018) (non-precedential). With respect to the "backlog of coumadin patient followup" facet of disclosure number 2, the administrative judge may consider whether that disclosure tracks disclosure number 5 in substance and can be disposed of on the same grounds as disclosure number 5. With respect to the "patient care neglect" facet of disclosure number 2, the administrative judge may consider whether that allegation constituted a separate disclosure or simply part of the "backlog of coumadin patient followup" allegation, and whether that allegation was fatally lacking in detail, as the government contends.

As part of the proceedings on remand, the Board should also address the extent to which Mr. Marana exhausted his administrative remedies before the OSC with respect to disclosure number 2. In its closing letter to Mr. Marana, the OSC made clear that he had exhausted his administrative remedies with respect to his claim that the staffing mismatch was "a waste or mismanagement of government personnel or funds." Supp. App'x 134. What is unclear is whether he exhausted his administrative remedies with respect to the claim he made before the administrative judge that the staffing mismatch resulted in a "backlog of coumadin patient followup" and "patient care neglect" in the medical center.

Some or all of those issues will bear on the question whether Mr. Marana could reasonably believe the conduct reported in disclosure number 2 was protected and can be the subject of a whistleblowing claim. But that determination is one that should initially be made by the Board, not the court. *See, e.g., Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1371 (Fed. Cir. 2020) (remanding "for the Board to assess in the first instance whether [the employee] non-

frivolously alleged that her disclosures were a contributing factor to a personnel action against her"); *Holderfield v. Merit Sys. Prot. Bd.*, 326 F.3d 1207, 1209–10 (Fed. Cir. 2003) (determinations underlying decision whether Board has jurisdiction over an IRA appeal are for the Board in the first instance); *Conejo v. Merit Sys. Prot. Bd.*, No. 2021-1347, 2021 WL 3891099, at *3 (Fed. Cir. Sept. 1, 2021) (non-precedential) ("Whether or not we could resolve that issue [whether certain disclosures met the standards of a non-frivolous allegation of all elements required for coverage under the Whistleblower Protection Act] ourselves, we deem it appropriate in this case to leave the analysis to the Board in the first instance."). We therefore remand the portion of the case relating to disclosure number 2 to allow the Board to decide whether disclosure number 2, to the extent it was preserved for consideration by the Board, is sufficient to give the Board jurisdiction over Mr. Marana's IRA appeal, and for any further proceedings that may be necessary thereafter.

Each party shall bear its own costs for this appeal.

**AFFIRMED IN PART AND REMANDED IN PART**