# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MAXIM V. KIDALOV,<br>　　　　Appellant, | DOCKET NUMBER<br>SF-1221-16-0530-W-1 |
| 　　　v. | |
| DEPARTMENT OF THE NAVY,<br>　　　　Agency. | DATE: February 13, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Maxim V. Kidalov</u>, Monterey, California, pro se.

<u>Michelle J. Hirth</u>, Monterey, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as MODIFIED to supplement the administrative judge's analysis of the contributing factor criterion for one protected activity, we AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The following facts, as further detailed in the initial decision, appear to be undisputed. In February 2009, the agency appointed the appellant to a tenure-track Assistant Professor position specializing in contract law at the Naval Postgraduate School (NPS), Graduate School of Business and Public Policy (GSBPP). *Kidalov v. Department of the Navy*, MSPB Docket No. SF-1221-16-0530-W-1, Initial Appeal File (IAF), Tab 76, Initial Decision (ID) at 2. The position generally required that he do three things: teach, engage in significant research and writing, and engage in service to the school and agency community. *Id*. In this time-limited position, the appellant was not guaranteed promotion and tenure, but he was expected to work toward and eventually apply for promotion and tenure.[2] ID at 2-3.

---

[2] For an Assistant Professor such as the appellant, promotion and tenure go hand-in-hand; promotion may not be granted unless tenure is granted. *See Kidalov v. Department of the Navy*, MSPB Docket No. SF-1221-16-0530-S-1, Stay Appeal File (SAF), Tab 11 at 414. Therefore, to the extent that we discuss the appellant's tenure, our findings apply equally to his nonpromotion.

After a tenure-track employee such as the appellant applies for tenure at the GSBPP, there are a number of steps to determine whether tenure will be granted. Generally speaking, the appellant's qualifications are sequentially considered by (1) a School Evaluation Committee (SEC), (2) a Faculty Promotion Council specific to the GSBPP (GSBPP FPC), (3) the Dean of the GSBPP, (4) a Faculty Promotion Council for the broader school (NPS FPC), (5) a Dean's Advisory Council (DAC), (6) the NPS Provost, and (7) the NPS President. ID at 3-4. While each of the others evaluate a candidate's qualifications and make recommendations, the decision to award or deny tenure ultimately lies with the NPS President. ID at 4.

The appellant became eligible for, and began participating in, the tenure application process in 2014. After gathering relevant information from the appellant, agency officials, and reviewers from outside the agency, the SEC "unanimously recommend[ed] with reservation" that he be granted tenure. ID at 5; IAF, Tab 13 at 83-86. The GSBPP FPC conducted an initial straw vote of 4 in favor, 8 neutral, and 9 opposed but held a final vote after further consideration with 13 in favor and 5 opposed. ID at 5-6; IAF, Tab 13 at 87-89. The Dean of the GSBPP recommended tenure. ID at 6; IAF, Tab 13 at 87-89. The NPS FPC expressed several reservations about the appellant's candidacy but ultimately voted 11 in favor and 2 opposed. ID at 6; IAF, Tab 20 at 79-83. The DAC voted 1 in favor and 3 opposed. ID at 6; IAF, Tab 20 at 83. Finally, the NPS Provost recommended that the appellant not be granted tenure, and the NPS President adopted that recommendation. ID at 6-7; IAF, Tab 20 at 88-89. Following that March 2015 decision, the agency granted the appellant a term appointment to wrap up his work, as is customary for individuals denied tenure. ID at 4, 7.

Over the following months, the appellant challenged the agency's decision to deny him tenure in a number of forums. ID at 7. As a result of an internal challenge, the NPS President concluded that the GSBPP FPC made a procedural error by failing to include reasons for the votes opposed to the appellant's tenure.

ID at 8; IAF, Tab 13 at 108-13. Therefore, he instructed the necessary parties to reconsider the appellant's application. The NPS President subsequently informed the appellant that, following re-review of his candidacy, the agency would not award him promotion and tenure. ID at 10; IAF, Tab 13 at 114.

The appellant also filed a complaint with the Office of Special Counsel (OSC), in which he alleged retaliation for protected disclosures and activities. ID at 7; IAF, Tab 10 at 13-262. In March 2016, OSC closed the complaint and this IRA appeal followed.[3] ID at 7-8; IAF, Tab 1 at 10. After developing the record and holding a 4-day hearing, the administrative judge issued an initial decision that denied the appellant's request for corrective action. ID at 1.

The administrative judge considered the appellant's 12 alleged disclosures and activities. ID at 28-57. She found that he met his burden of proving that Activities 1, 4, 5, 7, and a portion of 11 were protected. *Id*. Of those, she determined that the appellant met his burden of proving that Activities 5, 7, and a portion of 11 were a contributing factor in the personnel action at issue—the agency's decision to deny him promotion and tenure. ID at 58-66.

Although the administrative judge found that the appellant presented a prima facie case of whistleblower retaliation, she also determined that the agency met its burden of proving that it would have taken the same action in the absence of the appellant's protected disclosures and activities. ID at 66-112. The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 5. The agency has filed a response and the appellant has replied. PFR File, Tabs 9-10.[4]

---

[3] The appellant separately filed a request to stay his appointment's expiration. SAF, Tab 1; *see* 5 C.F.R. § 1209.8. The administrative judge denied the stay request. SAF, Tabs 9, 12. The appellant does not appear to challenge that stay decision on review. *See McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 14 (2011) (explaining the process for challenging a stay decision), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).

[4] The appellant also submitted a motion for leave to file a supplemental brief regarding statutory changes and new precedent issued while he was awaiting a Board decision in this appeal. PFR File, Tab 13 (referencing, *e.g., Hessami v. Merit Systems Protection*

**ANALYSIS**

Once jurisdiction is established in an IRA appeal such as this, an appellant may be entitled to corrective action if he shows by preponderant evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).[5]  5 U.S.C.

_____

*Board*, 979 F.3d 1362 (Fed. Cir. 2020)).  The agency has opposed the motion.  PFR File, Tab 19.  We find that these matters do not warrant further argument or a different result.  Among other things, the appellant is attempting to present a new constitutional argument as it relates to the appointment of the administrative judge that presided over his appeal.  PFR File, Tab 13 at 5-7 (referencing *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018) (holding that the Securities and Exchange Commission's appointment of Administrative Law Judges by staff members, rather than the Commission itself, violated the Appointments Clause); *Helman v. Department of Veterans Affairs*, 856 F.3d 920, 926-29 (Fed. Cir. 2017) (finding that a provision concerning the finality of an administrative judge's decision in an action taken under 38 U.S.C. § 713 violated the Appointments Clause and indicating that additional arguments about the separation of powers were moot)).  We will not accept further argument about his Appointments Clause claim, in particular, because it is belated.  *See McClenning v. Department of the Army*, 2022 MSPB 3, ¶ 25 (declining to consider a new Appointments Clause claim that was raised for the first time on review).  The appellant did not raise his constitutional arguments below, in his petition for review, or in the immediate aftermath of the case precedent he relies upon, throughout which he was represented by an attorney.  *Compare* IAF, Tab 6 (designating an attorney in June 2016), *with* PFR File, Tab 11 (withdrawal of the same attorney in 2019).  He instead waited until years after to raise these new constitutional arguments for the first time.  PFR File, Tab 13 (April 2022 motion seeking permission to present new constitutional arguments).  To the extent that the appellant is attempting to present a separation of powers claim as well, it is similarly belated.  Moreover, the Board lacks the authority to consider such a claim, which must instead be pursued through the judiciary.  *See Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669, 674 (6th Cir. 2018) ("Each of the three branches of the [F]ederal [G]overnment . . . has an independent obligation to interpret the Constitution[,] [b]ut only the Judiciary enjoys the power to invalidate statutes inconsistent with the Constitution.") (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. . . .  If two laws conflict with each other, the courts must decide on the operation of each.")).

[5]  The Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, which went into effect on December 27, 2012, expanded the grounds on which an IRA appeal may be filed with the Board.  *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014).  Prior to the enactment

§ 1221(e)(1); 5 C.F.R. § 1201.57(c)(4). However, the Board will not order corrective action if the agency then demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(2); *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 24 (2014); *see Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-14 (2015) (applying the burden-shifting scheme of 5 U.S.C. § 1221(e) to a claim of reprisal for protected activity under 5 U.S.C. § 2302(b)(9)(B)).[6]

The appellant's credibility arguments are unavailing.

Before turning to the specific allegations at issue in this appeal, we point out that the administrative judge made some general credibility findings. ID at 21-26. She found that the appellant and another witness, the GSBPP Associate Dean, lacked credibility.[7] ID at 22-26. As to the appellant, the administrative

---

of the WPEA, an appellant could only file an IRA appeal with the Board based on allegations of whistleblower reprisal under section 2302(b)(8). *See Wooten v. Department of Health and Human Services*, 54 M.S.P.R. 143, 146 (1992), *superseded by statute as stated in Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 5 (2014).

The Board has held that the WPEA should be applied when the appellant's protected activity occurred before, but the relevant personnel actions occurred after the December 27, 2012 effective date of the WPEA because the agency knew of the parties' rights, liabilities, and duties under the WPEA when it took, or failed to take, the personnel actions. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 50-51. Here, the disclosures and activities at issue occurred between December 2010 and February 2015, IAF, Tab 71 at 5-19, and the personnel action occurred in March 2015, when the agency denied the appellant tenure or promotion, IAF, Tab 1 at 13. Thus, the WPEA applies in this appeal.

[6] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. Section 1097 of the NDAA amended various provisions of Title 5 of the U.S. Code. The changes made by the NDAA do not implicate the issues in this appeal.

[7] The titles and roles of some individuals involved in this appeal changed over the relevant time period. For example, the same individual is described in the initial decision as the appellant's mentor, an Associate Professor, a Professor, and the GSBPP Associate Dean. *E.g.*, ID at 23, 30 n.9. For the sake of clarity, we will use a single title.

judge explained that he appeared excessively rehearsed. ID at 22. She also found that he often described things with an extreme assuredness that appeared unwarranted. ID at 24. In addition, the administrative judge found that some of the appellant's testimony was either internally inconsistent or inconsistent with other evidence of record. ID at 23-25.

On review, the appellant's petition begins with a number of challenges to the administrative judge's credibility findings. PFR File, Tab 5 at 4-12.[8] As further explained below, we find these arguments unavailing.

The Board has recognized a number of factors that may be relevant in resolving issues of credibility. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Some of those factors include a witness's character, the contradiction of the witness's version of events by other evidence, the inherent improbability of the witness's version of events, and the witness's demeanor. *Id*. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).

The appellant first argues that the administrative judge erred by deeming him not credible on any and all matters. PFR File, Tab 5 at 4. However, this misrepresents the administrative judge's findings. Although the administrative judge did provide general credibility observations, she also addressed the appellant's credibility as it pertained to specific matters. *Compare* ID at 21-26, *with* ID at 35-38. For example, concerning Activity 3, the appellant described an exchange in which the GSBPP Dean asked him to advocate on behalf of the GSBPP and the appellant declined by reciting rules of the South Carolina bar,

---

[8] It appears that the appellant mistakenly included the same credibility arguments in two separate sections of his petition for review, containing nearly identical language. *Compare* PFR File, Tab 5 at 4-12, *with id*. at 19-28. Although we have considered both, we will exclusively cite only one.

verbatim. ID at 35; Hearing Transcript 1 (HT1) at 100-01 (testimony of the appellant). The administrative judge noted that the GSBPP Dean's testimony did not corroborate that claim, and she further found it implausible that the appellant would recite, verbatim, the South Carolina bar rules. ID at 36; Hearing Transcript 3 (HT3) at 730 (testimony of the GSBPP Dean). Conversely, the administrative judge appears to have solely relied on and credited the appellant's testimony to find that he did engage in Activity 4. ID at 37-38; HT1 at 118-21 (testimony of the appellant).

The appellant also suggests that, while the Board generally defers to demeanor-based credibility findings, the deference should be limited when analyzing whether an agency has met its burden of proving by clear and convincing evidence that it would have taken the same action in the absence of protected disclosures or activities. PFR File, Tab 5 at 4-5 (referencing *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 29 n.3 (2012)). We disagree. As the Board explained in *Mattil*, the U.S. Court of Appeals for the Federal Circuit's decision in *Whitmore* requires an evaluation of all the pertinent evidence in determining whether an agency met its clear and convincing burden; exclusively relying on the agency's testimonial evidence in support of its position—without adequately considering the appellant's contrary evidence—is inadequate. *Mattil*, 118 M.S.P.R. 662, ¶ 29 & n.3 (citing *Whitmore*, 680 F.3d at 1368 (explaining that the Board must evaluate the evidence regarding the agency's burden "in the aggregate," considering both evidence that supports and detracts from a conclusion that the agency met its burden)). Neither case, however, requires that we afford demeanor-based credibility findings any less deference. *See Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 31-33 (2013) (discussing the requirements of *Whitmore* while still deferring to the administrative judge's demeanor-based credibility findings); *Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶¶ 14-15 (2013) (remanding for an administrative judge to

comply with the requirements of *Whitmore*, while recognizing that the administrative judge may need to resolve conflicting testimony based on the demeanor of witnesses).

The appellant next presents several arguments that suggest we should overturn the administrative judge's demeanor-based credibility findings. For example, the appellant asserts that the administrative judge improperly faulted his training as a lawyer and ability to speak at length about certain issues.[9] PFR File, Tab 5 at 5-8. In fact, the administrative judge simply observed that the appellant's legal training likely contributed to his testimony, which oftentimes appeared to be more of a rehearsed legal argument than an explanation of observed facts. ID at 22. The appellant also argues that the administrative judge improperly faulted his testimony for "extreme assuredness." PFR File, Tab 5 at 8-9. However, the administrative judge thoroughly supported that characterization with examples, ID at 24, which the appellant has not persuasively disputed. While the appellant disagrees with them, he has not presented sufficiently sound reasons for overturning the administrative judge's well-reasoned demeanor-based credibility findings.

As previously mentioned, in addition to demeanor-based credibility findings, the administrative judge found that the appellant's general credibility was diminished by inconsistencies between his testimony and the remainder of

---

[9] Within this argument, the appellant references his motion for discovery-related sanctions. PFR File, Tab 5 at 7-8. The administrative judge denied that motion but concluded that it would be inappropriate to consider some specific evidence because the agency was unable to produce explanatory documents. ID at 10-21. To the extent that the appellant's credibility arguments could also be construed as an argument that the administrative judge erred in denying his motion for sanctions, we have considered the matter and find no abuse of discretion. *See Defense Intelligence Agency v. Department of Defense*, 122 M.S.P.R. 444, ¶ 16 (2015) (recognizing that administrative judges have broad discretion to regulate the proceedings before them, including the authority to rule on discovery motions and to impose sanctions as necessary to serve the ends of justice); *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 9 (recognizing that an administrative judge's determination regarding sanctions will not be reversed, absent an abuse of discretion).

the record.  In an example, the administrative judge explained that the appellant described a witness's prior sworn testimony, definitively, in a way that was inconsistent with the evidence of record.  ID at 23-24; *compare* IAF, Tab 1 at 47-48, *and* Hearing Transcript 2 (HT2) at 510 (testimony of the appellant), *with* IAF, Tab 40 at 197, *and* HT3 at 686 (testimony of the SEC Chair), 707, 709-10 (testimony of a GSBPP FPC member).  Put more simply, the appellant insisted that the GSBPP Associate Dean advocated against his tenure during the GSBPP FPC meeting, but the evidence did not support that claim.  On review, the appellant presents a complicated argument to suggest that he merely made a reasonable and valid deduction.  PFR File, Tab 5 at 9-11.  However, in doing so, he seems to acknowledge that multiple firsthand witnesses were asked about the matter during his Board hearing and none corroborated his claim.  *Id.* at 10-11; HT3 at 86 (testimony of the SEC Chair), 707, 718-19 (testimony of the GSBPP Dean); Hearing Transcript 4 (HT4) at 873-74 (testimony of a GSBPP FPC and DAC member).  After considering the appellant's arguments, we are not persuaded that the administrative judge's credibility finding on this point was erroneous.  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

In a final argument concerning the administrative judge's general credibility findings, the appellant argues that the administrative judge improperly blamed him for staying on tenure track after engaging in protected activity.  PFR File, Tab 5 at 11-12.  Once again, this misrepresents the administrative judge's observations.  The administrative judge simply acknowledged the internal inconsistencies in the appellant's testimony.  ID at 24-25.  On the one hand, the appellant testified that he had no indications that he would have difficulty getting tenure.  HT1 at 27, 30-31 (testimony of the appellant).  On the other hand, he testified that he was afraid tenure would be denied in reprisal for protected

activity, while more generally describing several individuals who would influence the tenure decision as unethical and vindictive. *E.g.*, HT1 at 82, 197 (testimony of the appellant); HT2 at 418 (testimony of the appellant). The administrative judge's recognizing this does not impugn the appellant's decision to remain with the agency; it correctly recognizes that the appellant's testimony appeared somewhat inconsistent.

The administrative judge correctly analyzed the appellant's prima facie case of reprisal.

As we previously recognized, the appellant has the burden of proving that he made a protected disclosure or engaged in protected activity, and that the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action. *Supra* ¶ 9. On those points, the administrative judge found that the appellant met his burden of proving that Activities 1, 4, 5, 7, and a portion of 11 were protected. ID at 28-57. Of those, she determined that the appellant met his burden of proving that Activities 5, 7, and a portion of 11 were a contributing factor in the personnel action at issue—the agency's decision not to grant him promotion and tenure. ID at 58-66. On review, the appellant presents arguments pertaining to each of the 12 disclosures and activities he asserted. PFR File, Tab 5 at 13-19. We will address each in turn.

*Activity 1—December 2010 communications regarding the Civilian Expeditionary Workforce*

The appellant's first alleged activity is generally summarized[10] as follows: the appellant expressed interest in an overseas mission whereby he would provide procurement advice through the Civilian Expeditionary Workforce. IAF, Tab 40 at 240-42. Agency officials expressed some reservations because it would interfere with his normal course load. *Id*. at 244-47. While discussing the matter

_____

[10] A more detailed explanation of the appellant's 12 alleged disclosures and activities is included in the appellant's closing brief, IAF, Tab 71 at 5-19, and the initial decision, ID at 28-57.

with one of those agency officials (the GSBPP Associate Dean), the appellant explained that Department of Defense (DOD) policy precluded retaliation for expressing interest in or actually serving an expeditionary requirement. IAF, Tab 10 at 264-65. The GSBPP Associate Dean responded by suggesting that the provision would not apply if the agency denied his request to serve the mission. *Id*. The appellant then replied by reasserting that it would. *Id*.

The administrative judge found that the aforementioned reply message constituted a protected disclosure but the appellant failed to prove the contributing factor requirement. ID at 31, 59-61. She reasoned that this activity was too remote in time to satisfy the knowledge/timing test and the appellant failed to otherwise establish that his disclosure contributed to the agency's promotion and tenure decision. ID at 59-61.

On review, the appellant argues that the administrative judge failed to account for other officials' role in the matter. PFR File, Tab 5 at 13. He seems to suggest that the protected activity extended beyond the email message identified by the administrative judge as protected to also include the prior conversations during which agency officials expressed reservations about him accepting the overseas mission. *Id*. However, even if it violated DOD policy or was otherwise inappropriate for those officials to express reservations about him accepting the overseas mission, the appellant has not clearly shown that he disclosed the same. Further, even if he had, the appellant has failed to articulate any basis for us to conclude that these conversations contributed to the agency denying him promotion and tenure more than 3 years later. *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 25 (2015) (recognizing that the most common way to satisfy the contributing factor requirement is through the knowledge/timing test); *see also, e.g., Costello v. Merit Systems Protection Board*, 182 F.3d 1372, 1377 (Fed. Cir. 1999) (finding that "[a] two-year gap between disclosures and the allegedly retaliatory action is too long an interval to justify an inference of cause and effect between the two").

*Activity 2—Late 2011 communications regarding intellectual property protections*

The appellant's second alleged activity is generally summarized as follows: a student of the appellant, who was also a Contract Specialist at the NPS, asked him a question about Government contracting and intellectual property. HT1 at 84-85 (testimony of the appellant). The appellant reportedly responded by recommending that the school include particular language in contracts to ensure the Government retains rights to intellectual property developed by contractors, and he followed up by providing the same recommendation to other agency officials. *Id*.; IAF, Tab 10 at 275-76.

The appellant argued that this was a protected disclosure because he was revealing gross mismanagement or gross waste of funds in the form of millions of dollars lost if the agency failed to use proper contract language protecting intellectual property. HT1 at 92-94 (testimony of the appellant). The administrative judge disagreed. ID at 31-35. She found that, *inter alia*, the appellant may have disclosed the potential for, but he did not disclose any actual, waste of funds. ID at 35.

On review, the appellant appears to argue that existing contracts were already at risk for a waste of funds when he made this alleged disclosure. PFR File, Tab 5 at 13. Alternatively, he suggests that his disclosure was protected even if it revealed the potential for gross mismanagement or a waste of funds. *Id*. However, the only evidence the appellant cites for the underlying argument is his own testimony, agreeing when asked if he "became aware that some contracts for services provided to NPS did not provide adequate protections for intellectual property rights." *Id*.; HT1 at 82-84 (testimony of the appellant). In other words, he has not identified any actual contracts that were flawed or actual losses that resulted.

The Federal Circuit has cautioned that while "a disclosure of an impending action can qualify . . . we do not intend to convey the idea that any mere thought,

suggestion, or discussion of an action that someone might consider to be a violation of a law, rule, or regulation is a justification for a whistleblower complaint. Discussion among employees and supervisors concerning various possible courses of action is healthy and normal." *Reid v. Merit Systems Protection Board*, 508 F.3d 674, 678 (Fed. Cir. 2007). The context here suggests that the appellant simply answered a legal question by providing legal advice of a best practice. It does not suggest that he disclosed or reasonably believed that he was disclosing a violation of law, gross mismanagement, gross waste of funds, or any other category of protected disclosure.

*Activity 3—Refused request for personal representation*

The appellant's third alleged activity is generally summarized as follows: the GSBPP Dean reportedly asked the appellant to provide professional advisory service and advocacy for the GSBPP, to oppose the agency at large. HT1 at 99-101 (testimony of the appellant). The appellant reportedly declined, indicating that it would violate an applicable rule from the South Carolina bar, which he recited verbatim. *Id*.

The administrative judge recognized that the GSBPP Dean provided testimony that contradicted the appellant's claim. ID at 36; HT3 at 730 (testimony of the GSBPP Dean). She also concluded that the appellant's testimony on the matter, particularly the claim that he recited the South Carolina bar rule, verbatim, was not plausible. ID at 36. Accordingly, the administrative judge found that he failed to prove, by preponderant evidence, that this conversation even occurred. *Id*. She alternatively found that, even if the conversation did occur as alleged by the appellant, it did not amount to a protected disclosure or activity. ID at 37.

On review, the appellant challenges the administrative judge's findings by asserting that it was more implausible that he did not know the bar rule, verbatim, given his prior employment history as an in-house lawyer at a corporation and counsel for a U.S. Senate committee. PFR File, Tab 5 at 14; IAF, Tab 20 at 90.

In essence, the appellant is asking that we overturn the administrative judge's well-reasoned credibility findings, but we find no basis for doing so.  *See Crosby,* 74 M.S.P.R. at 105-06.

*Activity 4—February 2012 communications with the Inspector General*

The appellant's fourth alleged activity is generally summarized as follows: the appellant answered questions from the agency's Inspector General in concert with an investigation as to whether the NPS Provost and President accepted meals and alcohol as gifts from a prohibited source.  HT1 at 118-22 (testimony of the appellant).

The administrative judge found that this activity was protected by section 2302(b)(9)(C).  ID at 37-38.  However, she found that the appellant failed to prove that it was a contributing factor in the agency's promotion and tenure decision because there was no evidence that anyone who participated in the tenure decision had knowledge of this activity.  ID at 61-62.

On review, the appellant's sole argument pertaining to Activity 4 is that while the administrative judge correctly found his activity protected, she "omitted the context:  NPS/GSBPP culture of heavy reliance on slush funds funded by illegal gifts."  PFR File, Tab 5 at 14.  As follows, we modify the initial decision to supplement the administrative judge's contributing factor analysis for this protected activity, while still finding that the appellant did not meet his burden.

An appellant may establish the contributing factor criterion through the knowledge/timing test, i.e., proof that the official taking the personnel action knew of the whistleblowing and that the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing was a contributing factor in the personnel action.  5 U.S.C. § 1221(e)(1).  But the knowledge/timing test is not the only way to demonstrate the contributing factor element. *Dorney v. Department of the Army,* 117 M.S.P.R. 480, ¶ 14 (2012).  The Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the

personnel action, whether the whistleblowing was personally directed towards the officials taking the action, or whether these individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

The administrative judge recognized these standards when informing the parties of their burdens of proof in this appeal. IAF, Tab 3 at 4-5. She also recounted the same in the initial decision. ID at 58-59. However, for Activity 4, the administrative judge solely discussed the knowledge/timing test while finding that the appellant failed to prove the contributing factor criterion. ID at 61-62.

Looking beyond the knowledge/timing test, we find that the appellant has not otherwise established the contributing factor criterion for Activity 4. As detailed throughout this decision and the initial decision, evidence pertaining to the agency's reasons for taking the personnel action is strong. ID at 66-100. Plus, Activity 4 was not personally directed towards the officials taking the actions at issue in this appeal. Activity 4 was instead directed toward a prior NPS Provost and President that were removed, i.e., ones that preceded the NPS Provost and President that played roles in the personnel action before us. *Compare* HT1 at 118, 122 (testimony of the appellant, describing the former NPS Provost and President as being removed by the agency as a result of the 2012 investigation in which he participated), 98, 196 (testimony of the appellant, describing the new Provost and President who ruled on the appellant's tenure as starting in the summer of 2013), *with* IAF, Tab 20 at 88-89 (2015 decision, signed by the new NPS Provost and President, denying the appellant tenure). Finally, the appellant has not directed us to persuasive argument or evidence that the new NPS Provost and President had a desire or motive to retaliate against the appellant for Activity 4. His generic and cursory claim about the culture at the agency is not one that suffices for purposes of finding that Activity 4, which occurred years earlier and concerned other individuals, improperly motivated those responsible for denying him promotion and tenure.

*Activity 5—Legal advice regarding Acquisition Chair task order*

The appellant's fifth alleged activity is generally summarized as follows: agency officials wanted to contract with a retired military officer to serve as its Chair of Acquisition. HT1 at 129 (testimony of the appellant). Although the agency had done the same in years past, a question arose as to whether the contract would be improper because the work requested was inherently governmental. HT2 at 564-65 (testimony of the NPS Contracting Officer); HT3 at 730-31 (testimony of the GSBPP Dean), 790-91 (testimony of the GSBPP Associate Dean). The official in charge of requesting the contractual services, the GSBPP Associate Dean, asked the appellant for his legal opinion on the matter and the appellant indicated that it would, in fact, be improper. HT1 at 129-32 (testimony of the appellant); IAF, Tab 10 at 320-26, 329-33.

The administrative judge found that the appellant proved that this was a protected disclosure. ID at 38-40. She explained that he had a reasonable belief that the information contained in his conversations about the contract revealed a violation of applicable contracting regulations. ID at 40. The administrative judge further found that the appellant proved that this disclosure was a contributing factor to the agency's promotion and tenure decision, based on the knowledge/timing test. ID at 62-63.

Even though the administrative judge found that the appellant met his burden for Activity 5, the appellant's petition for review contains an argument about the same. As best as we can understand, the appellant alleges that the administrative judge mischaracterized the nature of the conversation between him and the GSBPP Associate Dean, during which the appellant made the disclosure. PFR File, Tab 5 at 14-15. While the administrative judge surmised that the GSBPP Associate Dean was merely trying to understand why the proposed contract was improper, when it had been accepted in years past, ID at 40, the appellant suggests that he instead had nefarious intentions of trying to circumvent hiring policies to pay the Chair of Acquisition far more than would be permissible

if he were a Government employee, PFR File, Tab 5 at 14-15. Although we will further discuss the motive to retaliate below, we are not persuaded by the appellant's speculation on this point. The administrative judge expressly recognized that the appellant's disclosure contributed to the GSBPP Associate Dean having the unexpected and significant burden of not being able to contract for the Chair of Acquisition. ID at 103.

*Activity 6—Objection to advice to Embassy Suites*

The appellant's sixth alleged activity is generally summarized as follows: after the NPS contracted with the Embassy Suites to host a symposium, the NPS delayed payment because of an accounting matter. HT3 at 590-92 (testimony of the NPS Contracting Officer). According to the appellant, the GSBPP Associate Dean approached him after a Bible study with a plan to get rid of the NPS Contracting Officer for the delay by having the Embassy Suites put the contract into collections. *Id*.; HT1 at 186-89 (testimony of the appellant). The appellant reportedly responded by indicating that this would violate 18 U.S.C. § 205.[11] HT1 at 189 (testimony of the appellant).

The administrative judge found that the appellant failed to prove that this alleged disclosure occurred. ID at 41-44. She found his testimony on the matter not credible. ID at 42. Alternatively, she found that, even if the conversation occurred as the appellant alleged, he did not have a reasonable belief that the plan

---

[11] Section 205 of Title 18 of the U.S. Code provides, in pertinent part, as follows:

(a) Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, other than in the proper discharge of his official duties—

(1) acts as agent or attorney for prosecuting any claim against the United States, or receives any gratuity, or any share of or interest in any such claim, in consideration of assistance in the prosecution of such claim; or

(2) acts as agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest;

shall be subject to the penalties set forth in section 216 of this title.

violated 18 U.S.C. § 205. ID at 43; *see Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 24 (2015) (recognizing that an individual making a disclosure may be protected from retaliation for whistleblowing based on his reasonable belief that his disclosure evidenced one or more of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8), even when his belief is mistaken), *aff'd per curiam*, 652 F. App'x 971 (Fed. Cir. 2016). The administrative judge explained that while that provision generally prohibits a Federal employee from acting as an agent or attorney for prosecuting any claim against the United States or receiving any gratuity or share of such claim, the alleged plan at issue was to merely advise the Embassy Suites of an option it could pursue to expedite the payment it was owed. ID at 43-44.

On review, the appellant challenges the administrative judge's credibility findings, but he has not presented any persuasive basis for us to disturb them. PFR File, Tab 5 at 15-16. The appellant also reasserts that the alleged plan to inform the Embassy Suites that it could file a collection action to recoup the payment it was owed would have violated 18 U.S.C. § 205, but we are not persuaded. *Id.* Even if the GSBPP Associate Dean did have a conversation with the appellant, indicating that he would recommend to the Embassy Suites that it could speed up payment by "put[ting] it in collections," as the appellant alleges, a disinterested observer would not consider that a violation of 18 U.S.C. § 205. HT1 at 188 (testimony of the appellant); *see Mithen*, 122 M.S.P.R. 489, ¶ 24 (recognizing that the test for reasonableness is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidence the wrongdoing disclosed); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 9 (2013) (considering an appellant's lack of special expertise in legal matters as a factor in the reasonableness of her belief that an agency violated a law, rule, or regulation).

*Activity 7—Communications regarding the McGraw-Hill company contract*

The appellant's seventh alleged activity is generally summarized as follows: agency officials asked the appellant to review a proposed contract with McGraw-Hill. HT1 at 199-202 (testimony of the appellant); IAF, Tab 10 at 299-307. In reviewing the proposed contract, the appellant identified and reported a problem with an unlimited indemnity provision in the agreement. HT1 at 203-06 (testimony of the appellant); IAF, Tab 10 at 299-307.

The administrative judge found that the appellant proved that Activity 7 was a protected disclosure because it revealed that the agency's proposed contract would violate the Anti-Deficiency Act. ID at 44-45. She also found that the appellant met his burden of proving that this disclosure was a contributing factor in the agency's promotion and tenure decision, based on the knowledge/timing test. ID at 63-64.

Although the administrative judge found that the appellant met his burden regarding Activity 7, she included a footnote explaining that the appellant provided misleading testimony about the dangers of the proposed indemnity provision. ID at 45, n.13. In short, the appellant estimated that the indemnity provision posed a financial risk of up to $5,000,000,000, but the administrative judge found that his estimate was based on assumptions that were, at best, strained. *Id*. On review, the appellant essentially disagrees, asserting that the administrative judge improperly "berated" him for his belief as to the financial risk. PFR File, Tab 5 at 16. We find nothing improper about the administrative judge's analysis. She simply recognized that while the appellant met his burden for Activity 7, some of his testimony about the matter was questionable.

*Activity 8—Refusal to participate in media efforts to discredit an agency Inspector General report*

The appellant's eighth alleged activity is generally summarized as follows: several NPS faculty members disagreed with the findings included in an Inspector General report about the NPS Provost accepting gifts from a prohibited source.

HT3 at 737 (testimony of the GSBPP Dean). During efforts to set the record straight, two members of the faculty asked the appellant to write an editorial arguing that the NPS Provost's actions were not illegal, but the appellant declined. HT1 at 229-37 (testimony of the appellant). According to the appellant, he was refusing to do something that would have violated the law. *Id*. at 236-37; *see* Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786, 804 § 8001 ("No part of any appropriation contained in this Act shall be used for publicity or propaganda purposes not authorized by the Congress").

The administrative judge found that the appellant failed to prove that he engaged in activity protected under 5 U.S.C. § 2302(b)(9)(D). ID at 45-48. This provision prohibits retaliation for an employee's refusal to obey an order that would require he violate a law. 5 U.S.C. § 2302(b)(9)(D). In short, the administrative judge concluded that the appellant may have been asked to write an editorial, but he failed to prove that those individuals ordered him to do so during working hours in potential violation of law. ID at 46-48. Therefore, his refusal was not protected by section 2302(b)(9)(D), because that provision applies only in the context of an order, and only if that order is unlawful.[12] *Id*.

On review, the appellant reasserts that while the professors who made the request were not in his immediate chain of command, they nonetheless had the authority to tell him what to do. PFR File, Tab 5 at 16-17. He further argues that

_____

[12] As the administrative judge correctly recognized, at the time the appellant filed this appeal, section 2302(b)(9)(D) made it a prohibited personnel practice to take an action against an employee for "refusing to obey an order that would require the individual to violate a law." ID at 46. The Federal Circuit considered the provision and held that "law" only included statutes. *Rainey v. Merit Systems Protection Board*, 824 F.3d 1359, 1361-62, 1364-65 (Fed. Cir. 2016). However, on June 14, 2017, while the appellant's petition for review was pending in the instant appeal, the President signed an amendment to section 2302(b)(9)(D), so that it now provides protections for "refusing to obey an order that would require the individual to violate a law, rule, or regulation." *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 12. Nevertheless, the Board has determined that this expansion does not apply to events occurring before its enactment, and so it does not change the analysis in this case. *Id*., ¶ 19.

he interpreted their request as not only an order, but one to complete the task during working hours, not on his personal time. *Id*. However, the appellant has not identified any persuasive evidence in support of his position. In fact, it appears that the only evidence supporting his version of the events is the appellant's own testimony, which the administrative judge found not credible, based on his demeanor, evasiveness, and the inherent improbability of his version of events. ID at 47 (referencing HT1 at 229-37 (testimony of the appellant); HT2 at 414-16 (testimony of the appellant)). We discern no basis for overturning those findings. *See Haebe*, 288 F.3d at 1301.

*Activity 9—The appellant's research as an Assistant Professor*

The appellant's ninth alleged activity is generally summarized as follows: the appellant's academic research and writing efforts included the topic of contracting between the agency and small businesses. HT1 at 240-45 (testimony of the appellant). According to the appellant, the resulting papers included protected disclosures because they described agency shortcomings, such as the NPS failing to reach its stated goal of the percentage of contract dollars spent on contracts with small businesses. IAF, Tab 10 at 349-408, 645-824, Tab 71 at 15-16.

The administrative judge found that the appellant failed to prove that he reasonably believed the contents of his research papers disclosed a violation of law, rule, or regulation. ID at 48-50. She explained that he essentially had focused on the barriers that small businesses faced in fully participating in Government contracting and what NPS could do to better facilitate those efforts. ID at 49. The administrative judge further found that while the research papers discussed the agency's small business goals, they did not include any assertion that the agency violated associated regulations. ID at 50.

On review, the appellant suggests that while the research papers at issue did not disclose specific violations of law or regulation, they did disclose how the agency failed to meet goals, policies, or rules. PFR File, Tab 5 at 17.

Specifically, he alleges that his report "called on NPS to implement the required controls, outreach, effective competition, and warned that Senior Executives in charge of NPS must improve practices or risk poor ratings on compliance and spending goal increases." *Id*. However, we reaffirm that it was the appellant's burden of proving, by preponderant evidence, that he made a protected disclosure. We find nothing in his argument on review to reach a conclusion different than the administrative judge concerning Activity 9. While the appellant has presented vague assertions that the agency needed to improve when it came to small business contracting, and his research papers contain much more complicated, academic discussions of the same, he has not clearly articulated and identified when and how he made a specific disclosure of a violated law, rule, or regulation. *See generally Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006) (recognizing that a disclosure must be specific and detailed, not a vague allegation of wrongdoing regarding broad or imprecise matters).

*Activity 10—Objecting to an order to fail a student's thesis*

The appellant's tenth alleged activity is generally summarized as follows: for one particular student, the appellant both supervised her thesis and co-authored a separate paper with her that included the thesis. HT1 at 250 (testimony of the appellant). After the appellant submitted the thesis to the Acquisition Research Program for editing support, the appellant alleges that the GSBPP Associate Dean directed him to fail the student, remove her from the submission, or both, and the appellant refused. *Id*. at 251; HT2 at 283-84 (testimony of the appellant).

The administrative judge found that the appellant failed to prove that Activity 10 was protected. ID at 50-53. The appellant characterized the interaction as him refusing to obey an order that would violate the law. IAF, Tab 71 at 16. Instead, the administrative judge found that the evidence suggested the GSBPP Associate Dean had simply expressed concern and confusion as to why the appellant had submitted the student's thesis for editing support. ID

at 51-52. In essence, while the appellant had funding to support the editing of his own work, the student's work did not appear to qualify, so the GSBPP Associate Dean questioned whether the appellant either had done the student's work himself or had submitted the student's work as his own. *Id*. Alternatively, the administrative judge found that, even if the GSBPP Associate Dean had ordered the appellant to fail the student, the appellant did not establish how doing so would have violated the law. ID at 52-53.

On review, the appellant argues that funded researchers routinely work in conjunction with students and the record contains no evidence of a ban on doing so. PFR File, Tab 5 at 18. However, even if true, that does not require a different result. The administrative judge found that the appellant did not show that the GSBPP Associate Dean gave him any order, much less an unlawful one. ID at 51-53. The appellant's assertions concerning the propriety of his submission for editing support do not address either of those dispositive conclusions.

*Activity 11—Perceiving the appellant as an associate of whistleblowers*

The appellant's eleventh alleged activity is generally summarized as follows: according to the appellant, two agency employees, a Contract Specialist and the Director of the NPS Contracting Directorate, were perceived as whistleblowers for a number of reasons. HT2 at 298-99 (testimony of the appellant). He further alleged that the agency perceived him as an associate of those individuals. *Id*.

Regarding the Contract Specialist, the administrative judge found that she did qualify as a whistleblower based on a paper she authored that included claims of Anti-Deficiency Act violations; she did not qualify as a whistleblower on the other bases asserted by the appellant: being involved either in contracts that were highlighted in a presentation about bad contracting, or in an Inspector General investigation. ID at 54-56. Regarding the Director of the NPS Contracting Directorate, the administrative judge found that she did qualify as a

whistleblower based on evidence that she cooperated with an Inspector General investigation. ID at 55-56. She also found that the appellant proved that he was perceived as an associate of those whistleblowers. ID at 56. Finally, the administrative judge found that the appellant's association with the Contract Specialist was a contributing factor in the agency's promotion and tenure decision, but not his association with the Director of the NPS Contracting Directorate. ID at 64-65.

On review, the appellant argues that the administrative judge discounted the whistleblowing of the Contract Specialist and the Director of the NPS Contracting Directorate, "baselessly speculating they might be incompetent." PFR File, Tab 5 at 18-19. Once again, the relevance of this argument is not readily apparent, and it generally misrepresents the administrative judge's findings. As explained above, the administrative judge determined that the appellant failed to prove that the Contract Specialist was perceived as a whistleblower in connection with an ad hoc committee's presentation about bad contracting within the NPS. ID at 54-55. Based on her review of that presentation, the administrative judge concluded that the presentation may have portrayed the Contract Specialist—rightly or wrongly—as incompetent, but did not portray her as a whistleblower. ID at 55; IAF, Tab 10 at 843-44. The appellant's argument on review does not warrant a different conclusion.

*Activity 12—Advice regarding the appropriate contracting vehicle*

The appellant's twelfth alleged activity is generally summarized as follows: the GSBPP Associate Dean tasked the appellant with determining whether the agency could require that research funds be awarded through contracts rather than grants. HT2 at 304-06 (testimony of the appellant). The appellant researched the matter and provided a response. *Id.* at 308-09.

The administrative judge found that the appellant essentially verified another agency official's legal opinion; his communications did not reveal a violation of law, rule, regulation, or other protected disclosure. ID at 57. She

further found that while the appellant testified that he believed the GSBPP Associate Dean was asking the question for nefarious purposes, he did not disclose the same. *Id.*

On review, the appellant asserts that the administrative judge "ruled that [a] disclosure within legal advice is unprotected" when, in fact, Government lawyers' advice can be protected. PFR File, Tab 5 at 19. However, the administrative judge did not find that lawyerly advice cannot be protected; rather, she found that the appellant's answer when asked to verify a legal opinion was not a protected disclosure of agency wrongdoing. ID at 57. The appellant has failed to present us with any reason to conclude otherwise. Based on his own testimony about the matter, it appears that the appellant did not disclose that a violation of law, rule, regulation, or other impropriety had occurred; he simply provided an answer when asked what the applicable laws, rules, and regulations required. HT2 at 309 (testimony of the appellant).

In sum, as detailed above, we agree with the administrative judge's findings as to the appellant's alleged protected activities and whether he met his burden to prove those activities contributed to the agency's decision to deny him tenure and promotion.

The administrative judge correctly found that the agency proved, by clear and convincing evidence, that it would have denied the appellant a promotion and tenure in the absence of his protected activities.

When an appellant meets his burden to establish a prima facie case of reprisal for whistleblowing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's whistleblowing. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 26 (2016). Clear and convincing evidence is "that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e). In determining whether an agency has met this burden, the Board will consider the following

factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Scoggins*, 123 M.S.P.R. 592, ¶ 26. The Federal Circuit has held that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore*, 680 F.3d at 1368; *Scoggins*, 123 M.S.P.R. 592, ¶ 26.

The administrative judge conducted an extensive analysis of the three *Carr* factors to determine that the agency met its burden. ID at 66-112. The majority of that analysis involved the first *Carr* factor. The administrative judge found that the agency had strong evidence in support of its promotion and tenure decision. ID at 66-100. For the second *Carr* factor, she found that several individuals involved in the agency's promotion and tenure decision had varying degrees of motive to retaliate, but that motive was not strong for any. ID at 100-10. Finally, she found that there was little evidence of comparators for purposes of the third *Carr* factor, and that evidence which was available rendered the factor neutral. ID at 110-11. On balance, the administrative judge concluded that the evidence in support of the agency's promotion and tenure decision was far stronger than the motive to retaliate. ID at 111-12.

On review, the appellant first argues that the administrative judge's analysis of the *Carr* factors is flawed because she placed the burden of proof on him, rather than on the agency. PFR File, Tab 5 at 28. We disagree. The administrative judge utilized the proper standard, requiring that the agency prove that it would have taken the same action notwithstanding the appellant's protected activities. *E.g.*, ID at 66. While she did discuss the appellant's arguments and

matters that detracted from the agency's case, consistent with the requirements of *Whitmore*, she did not improperly place the burden of proof on the appellant.

The appellant next disputes the administrative judge's findings concerning the first *Carr* factor by reasserting that his performance warranted promotion and tenure. PFR File, Tab 5 at 29-48. Specifically, he disagrees with her finding that the SEC gave strong reasons for its decision to recommend the appellant with reservations. On this point, the appellant essentially disputes each of the administrative judge's findings by presenting separate arguments for his performance, including the number and quality of his publications in academic journals, *id*. at 29-33, the number of theses he advised, *id*. at 34-35, the amount of funding he secured, *id*. at 35-36, the quality of his teaching, *id*. at 36-40, his service, *id*. at 40-41, his collegiality, *id*. at 42-45, and his prior performance ratings, *id*. at 46-47. Although we have considered each of his arguments, we are not persuaded, as further explained in the examples below.

As previously recognized, the SEC is one of many groups or individuals that considered the appellant's qualifications before "unanimously recommend[ing] with reservation" that he be awarded tenure. *Supra* ¶ 4; IAF, Tab 13 at 83-86. In addition to providing the first significant evaluation of a promotion and tenure candidate, upon which subsequent evaluations may rely, the record suggests that the SEC's evaluation is the most extensive. The SEC gathers information from various sources, such as former students and peers at outside institutions, before issuing a detailed report about the candidate's strengths and weaknesses. *Kidalov v. Department of the Navy*, MSPB Docket No. SF-1221-16-0530-S-1, Stay Appeal File (SAF), Tab 11 at 430-35. In the appellant's case, the SEC's detailed assessment recognized some areas in which he had provided meaningful contributions, and others in which the SEC deemed him to have struggled. For example, the SEC concluded that his distance learning work needed improvement and reviews of his collegiality were mixed because some peers found that he was not reliable or timely in completing tasks. IAF, Tab 13

at 86. In another example, the SEC found that while his research was highly valued among his peers, he had "limited impact in the traditional academic literature." *Id*.

As he did below, the appellant argues that it was improper for the SEC to issue its recommendation with reservations, which he characterizes as a "scarlet letter." PFR File, Tab 5 at 29-30. However, the administrative judge provided a detailed analysis of the SEC, how it came up with its final assessment, and the requirement that it provide an "objective evaluation" regarding the appellant's candidacy for promotion and tenure. ID at 76-79. Despite the appellant's suggestion that the SEC should have provided a more definitive recommendation, the administrative judge found nothing in the agency's policies preventing the SEC from expressing reservations as part of its conclusion. ID at 78-79; SAF, Tab 11 at 429-35. On review, the appellant points to the instruction for a "clear recommendation." PFR File, Tab 5 at 29; IAF, Tab 13 at 70. However, we are not persuaded that a "clear recommendation" requires a simple yes or no, devoid of any qualifiers or other explanatory signals.

In another example, we note that the administrative judge provided a lengthy analysis of the appellant's and his peers' publications. ID at 96-99. Among other things, she found that the appellant was advised to increase the rate of publication during his third-year review, but he failed to do so. ID at 96. She further found that the appellant produced fewer publications than two specific comparators he identified. ID at 96-97. The administrative judge also recognized that his peers gave mixed reviews on the quality of the journals in which he published. ID at 98-99. While the appellant asserted that the GSBPP Associate Dean told him in which journals to publish, the administrative judge found that testimony not credible. *Id*.

On review, the appellant disagrees with each of the administrative judge's findings concerning the quantity and quality of the journals in which he published. PFR File, Tab 5 at 30-33. However, we find his arguments are not

persuasive. Moreover, we agree with the administrative judge's broader conclusion—the appellant continually treats the promotion and tenure decision as if it were based on his accomplishing a set number of tasks, but that oversimplifies the agency's holistic decision-making process. ID at 71-72, 111. For example, the appellant repeatedly has argued that seven was the target number of publications for promotion and tenure, and he met that target. PFR File, Tab 5 at 30-32; IAF, Tab 71 at 23. However, he seems to have no evidence, other than his own testimony, to support that assertion. HT1 at 43 (testimony of the appellant); HT2 at 400-01 (testimony of the appellant). After reviewing agency policy regarding promotion and tenure, we find no set target number of publications. *See, e.g.*, SAF, Tab 11 at 410-14; IAF, Tab 13 at 53-55.

To be clear, the appellant's publications were, in many respects, praised. A notable example of this is reflected in the SEC evaluation of his candidacy for promotion and tenure, which included "predominantly positive" reviews by both agency officials and members of academia from outside the agency. IAF, Tab 13 at 84-86. However, one external reviewer from Ohio State University explained that while the appellant's scholarly activity was very good, it would not meet his university's standards for tenure "due to the quality of the journals in which he placed his research, the rate of productivity, and number of citations to his work by other scholars." *Id*. at 85-86. As previously mentioned, the SEC gathers such external reviews of a tenure candidate's research as part of its recommendation. SAF, Tab 11 at 431. The record paints a similar picture in other aspects of the appellant's candidacy: while he was largely considered an effective educator, officials found his teaching in a distance learning capacity lacking; while some of his peers considered the appellant a good colleague, others found him unreliable and untimely. IAF, Tab 13 at 86. In other words, the appellant's reviews were largely good, but mixed. Although it appears unlikely that the agency would have denied the appellant promotion and tenure based on any one of his perceived

deficiencies, their sum caused a notable number of evaluators to recommend that his candidacy be denied.

As thoroughly detailed throughout the initial decision, the record contains substantial evidence of the appellant's mixed reviews and the underlying causes for concern about his candidacy, both in terms of documentation and witness testimony that the administrative judge found credible. A small sampling of that evidence includes testimony from the SEC Chair about her unfavorable view of the appellant's publications and teaching, HT3 at 645, 649-51 (testimony of the SEC Chair), testimony about faculty observations of the appellant's teaching and the resulting concerns, HT3 at 752-55 (testimony of an SEC member), documentation of the appellant's untimeliness, even in the context of his promotion and tenure submissions, IAF, Tab 43 at 29, 31-33, 49-55, and documentation of distance learning students' complaints about many aspects of his teaching, such as his untimeliness and disorganization, *id*. at 66, 75-76. While the appellant insists that he deserved promotion and tenure, we agree with the administrative judge's conclusion that the agency presented strong evidence in support of its decision.

The appellant's final arguments concern the administrative judge's conclusions regarding the second *Carr* factor—the motive to retaliate. PFR File, Tab 5 at 48-60. To recall, the appellant presented a prima facie case of reprisal concerning the following activities:

- Activity 5—the appellant's disclosure to the GSBPP Associate Dean that a proposed contract for a Chair of Acquisition would violate applicable contracting regulations in response to a question about the same;

- Activity 7—the appellant's disclosure to agency officials that a proposed McGraw-Hill contract would violate the Anti-Deficiency Act in response to a request from the GSBPP Dean that he review the contract; and

- Activity 11—the appellant's association with a whistleblower, who was both a student and Contract Specialist for the agency, who disclosed Anti-Deficiency Act violations in a paper she authored.

*Supra* ¶¶ 35-37, 41-43, 53-54.

To also recall, the appellant's qualifications for promotion and tenure were considered by and evaluated as follows:

(1) the SEC "unanimously recommend[ed] with reservation" that he be granted tenure;

(2) the GSBPP FPC voted 13 in favor and 5 opposed to granting the appellant tenure;

(3) the Dean of the GSBPP recommended tenure;

(4) the NPS FPC voted 11 in favor and 2 opposed to granting tenure;

(5) the DAC voted 1 in favor and 3 opposed to granting tenure;

(6) the NPS Provost recommended that the appellant not be granted tenure; and

(7) the NPS President denied the appellant promotion and tenure.

*Supra* ¶¶ 3-5.

The administrative judge first found that the SEC members themselves had little, if any, awareness of the appellant's protected activity or motive to retaliate. ID at 100-01. However, she acknowledged that the SEC relied on information from two pertinent individuals, an individual who once served as the appellant's Area Chair and the GSBPP Associate Dean. ID at 101. For the Area Chair, the administrative judge found no evidence he knew of Activities 5, 7, or 11. ID at 102. For the GSBPP Associate Dean, she found that he had the greatest motive to retaliate, given his knowledge of and involvement in Activity 5, but that motive still was not strong. ID at 103-04. The administrative judge further found no evidence that the GSBPP Associate Dean was even aware of Activities 7 or 11. ID at 104.

Moving past the SEC to other evaluators of the appellant's promotion and tenure candidacy, the administrative judge found no evidence of the official responsible for the GSBPP FPC process having been aware of the appellant's protected activities. ID at 104-05. Next, she found that the GSBPP Dean was aware of Activities 5 and 7, and had some limited motive to retaliate, but he

actually recommended the appellant be granted tenure. ID at 105-06. The administrative judge then found that a Professor who was involved in both the NPS FPC and the DAC was aware of Activity 7 and the underlying contract, and had some limited motive to retaliate. ID at 107-08. She next found no evidence that the DAC members who voted against the appellant's tenure or the Provost who recommended he not be granted tenure had any knowledge of his protected activities. ID at 109. Finally, the administrative judge found that the President, who made the final decision to deny the appellant tenure, was only aware of Activity 11. *Id.* She further found that the context suggested that the President had little motive to retaliate and was likely considering that activity a positive because it was ultimately bringing renown to the NPS. *Id.*

On review, the appellant argues that the record presents a convincing mosaic of strong retaliatory motives for numerous officials involved in the promotion and tenure process, such as the NPS President, the Provost, various Deans, Acting Deans, or Associate Deans, the members of the NPS FPC, and the members of the DAC. PFR File, Tab 5 at 48-60. In large part, the appellant's argument relies on cases wherein the Board found that an individual's disclosures of subordinate employees' wrongdoing created a motive to retaliate on the part of their supervisors. *Id.* at 49; *see, e.g., Chavez,* 120 M.S.P.R. 285, ¶¶ 32-33. According to the appellant, "Board law makes clear [that] these motives are strong . . . as a matter of law." PFR File, Tab 5 at 49. We disagree.

While it is true that officials who are not directly implicated in a protected disclosure may still have a motive to retaliate, these matters are considered on a case-by-case basis. *See, e.g., Robinson v. Department of Veterans Affairs,* 923 F.3d 1004, 1019-20 (Fed. Cir. 2019) (discussing a professional motive to retaliate when assessing the second *Carr* factor); *Whitmore,* 680 F.3d at 1371 (recognizing that an individual *may* have a motive to retaliate for a protected disclosure, even if "outside that whistleblower's chain of command, not directly involved in alleged retaliatory actions, and not personally named in the

whistleblower's disclosure"); *Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 17 (2016) (finding little evidence of retaliatory motive for the whistleblower's supervisor; no evidence that another official was even aware of the whistleblowing; and evidence that the disclosure did not reflect negatively on the one official who potentially had a motive to retaliate based on his supervising the alleged wrongdoer, because the agency quickly investigated and found no wrongdoing). Moreover, the appellant's arguments in this regard omit pertinent facts and findings by the administrative judge which run counter to the appellant's assertions. For example, while the appellant argues that the Provost had a strong motive to retaliate by virtue of his position, PFR File, Tab 5 at 49, he seems to ignore the administrative judge's conclusion that the Provost was altogether unaware of his protected activities, ID at 109. While the appellant argues that the GSBPP Professor who sat on the DAC also had a strong motive to retaliate by virtue of his position, PFR File, Tab 5 at 49, he seems to ignore the fact that the Professor at issue was the only member of the DAC who voted in favor of his candidacy, IAF, Tab 20 at 83, 85; HT4 at 857-62 (testimony of the DAC member).

The appellant also presents extensive arguments alleging that the administrative judge failed to properly account for the financial motives of individuals involved in the agency's promotion and tenure decision. PFR File, Tab 5 at 49-54. As an example, even though he has alleged that he saved the agency as much as $5,000,000,000 by disclosing that a proposed McGraw-Hill contract would violate the Anti-Deficiency Act (Activity 7), he suggests that agency officials were motivated to retaliate for that disclosure because it threatened the agency's funding. *Compare id*. at 50, *with* HT1 at 212 (testimony of the appellant). He also discusses the findings of financial improprieties by the agency's Inspector General, suggesting that those instances of wrongdoing support his case, without clearly articulating how the one has anything to do with the other. PFR File, Tab 5 at 50-53. Again, we are not persuaded. The

administrative judge provided a well-reasoned analysis of the pertinent officials and their potential motive to retaliate. ID at 100-10.

Although the appellant's petition for review references the third *Carr* factor, it does not clearly articulate any argument about the same. PFR File, Tab 5 at 28. In short, the administrative judge found that there was limited evidence of comparators, but that the evidence which was available showed that the agency analyzed the appellant's qualifications in a manner consistent with other candidates. ID at 110-11; IAF, Tab 61 at 6-7, 56-58. She therefore concluded that the third *Carr* factor was neutral. ID at 110-11. Absent any substantive argument to the contrary, we find no basis for reaching a contrary conclusion.

Despite the appellant's numerous arguments to the contrary, we agree with the administrative judge's findings. Although the appellant presented a prima facie case of whistleblower reprisal, the agency met its burden of proving by clear and convincing evidence that it would have taken the same personnel action in the absence of his protected activity. Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must <u>receive</u> your

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.